RICE INVESTMENT COMPANY,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 77–2275.

United States Court of Appeals,
Fifth Circuit.

Sept. 4, 1980.

M. Carr Ferguson, Asst. Atty. Gen., Washington, D. C., Gilbert E. Andrews, Chief, App. Section, Crombie J. D. Garrett, Karl Schmeidler, Attys., Tax Div., Dept. of Justice, for defendant-appellant.

William T. Green, III, Houston, Tex., for plaintiff-appellee.

Before GODBOLD, GARZA and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

In October, 1973, Rice Investment Company ("Rice") loaned Handy Stop, Inc. (the "Debtor") $67,583.20. In connection with the loan, the Debtor executed and delivered to Rice a security agreement pursuant to which the Debtor granted to Rice a security

interest in all of the Debtor's inventory then owned or thereafter acquired. A financing statement was filed in the office of the Secretary of State of the State of Texas on October 29, 1973. The Debtor made payments on its indebtedness to Rice from time to time. In March, 1975, $46,317.54 remained owing from the Debtor to Rice.

The Debtor incurred liabilities for withholding and FICA taxes for the third and fourth quarters of 1973 and the first quarter of 1974 in the total amount of $11,-853.19. Assessments of the taxes were made during March, 1974. Thereafter, a notice of a federal tax lien in the amount of $8,521.51 was filed on April 26, 1974, for the third and fourth quarters of 1973, and a further notice of a federal tax lien in the amount of $4,587.59 was filed on August 5, 1974, for the first quarter of 1974. The Internal Revenue Service levied upon the Debtor's inventory on August 18, 1974. The outstanding tax liability of the Debtor, including interest, at that time was $13,-514.18. The perishable inventory was sold by the United States on August 28, 1974 for $750, and the nonperishable items were sold on November 14, 1974 for $3,500.

In September, 1974, Rice brought suit against the United States under 26 U.S.C. § 7426 (1976) seeking recovery from the United States of the proceeds ($4,250) received by the United States from the sale of the Debtor's inventory. Rice's second amended complaint asserts that the lien of the United States under 26 U.S.C. § 6321 (1976) in the inventory of the Debtor was junior to the lien of Rice under 26 U.S.C. § 6323 (1976) (amended 1978; amendment not relevant to this appeal) and that the levy of the United States was therefore unlawful. During the proceedings, in response to interrogatories propounded by the United States, Rice acknowledged that it did not have any information in its possession by which it could determine the exact date on which the Debtor acquired the inventory which was seized by the Internal Revenue Service.[1] Further, Rice admitted, in its motion for summary judgment, that none of the actual inventory on hand in October, 1973, when the security agreement was entered into, was part of the inventory seized and sold on August 28, 1974, and November 14, 1974.

On motions for summary judgment by both parties, the district court, without opinion, issued an order granting Rice's motion and denying the motion of the United States.

The question presented by this appeal is whether the federal tax lien filed by the United States on April 26, 1974,[2] pursuant to 26 U.S.C. § 6321, primes the security interest held by Rice in the inventory which was seized by the United States on August 18, 1974. We hold that the lien of the United States does prime the security interest of Rice in such inventory, and accordingly, we reverse the summary judgment granted by the district court and remand with instructions to enter summary judgment for the United States.

### Some History on the Problem

The opinion of this court in *Texas Oil & Gas Corp. v. United States*, 466 F.2d 1040 (5th Cir. 1972), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973), contains a description of the history of the competition between federal tax liens and private liens.[3] We will repeat here only so much of that history as is necessary for an understanding of the problem before the court.

---

1. The Debtor's business consisted of a drive-in grocery store, and its inventory consisted of the perishable and nonperishable items customarily sold in such a store.

2. *Since the amount of gross proceeds from the sale of the inventory ($4,250) is less than the amount of the lien ($8,521.51) as to which notice was filed on April 26, 1974, we concern ourselves here only with the lien filed on that date.*

3. *See generally* Coogan, *The Effect of the Federal Tax Lien Act of 1966 Upon Security Interests Created Under the Uniform Commercial Code*, 81 Harv.L.Rev. 1369 (1968); Plumb, *Federal Liens and Priorities—Agenda for the Next Decade* (pts. 1–3), 77 Yale L.J. 228, 605, 1104 (1967–1968); Kennedy, *From Spokane County to Vermont: The Campaign of the Federal Government against the Inchoate Lien*, 50 Iowa L.Rev. 724 (1965); Kennedy, *The Relative Priority of the Federal Government: The Perni-*

Under 26 U.S.C. § 6321, every federal tax which is not paid on demand becomes a lien "upon all property and rights to property, whether real or personal, belonging to" the taxpayer. After-acquired property, such as the Debtor's property in this case, is reached by the lien.[4] The lien is effective from the date of assessment of the tax [5] and has aptly been described as a secret lien.[6] When the lien was first created in 1866,[7] it prevailed, even though secret, against a bona fide purchaser for value.[8] In 1913, however, Congress extended protection to purchasers, mortgagees and judgment creditors,[9] and in 1939, to pledgees,[10] against federal tax liens of which notice had not been filed in a designated office. Further, recognizing the impracticability of searching for tax liens in some cases, Congress in 1939 provided priority over filed tax liens under certain conditions for purchasers of, and lenders secured by "securities" [11] and in 1964, for purchasers of motor vehicles.[12] However, as against the rest of the world, including the taxpayer himself, the federal tax lien was effective upon assessment without any need for public notice.

The most basic principle employed in the adjudication of the priority of competing liens is "the first in time is the first in right." [13] When a federal tax lien is one of the liens involved, however, the Supreme Court added a gloss on that principle by requiring that in order to be "first in time," the nonfederal lien must first have become "choate," i. e., the identity of the lienor, the property subject to the lien and the amount of the lien must be established beyond any possibility of change or dispute.[14] Further, the determination of whether "a lien has acquired sufficient substance and has become so perfected as to defeat a later-arising or later-filed federal tax lien" is a matter of federal law.[15]

As the federal law on "choateness" developed, few liens prevailed in the battle against federal tax liens.

cious Career of the Inchoate and General Lien, 63 Yale L.J. 905 (1954).

4. Glass City Bank v. United States, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945); Dean Constr. Co. v. Simonetta Concrete Constr. Corp., 65–1 U.S. Tax Cas. ¶ 9253, 37 F.R.D. 242 (S.D.N.Y.1965); In re: Hudon & Son, Inc., 65–2 U.S. Tax Cas. ¶ 9517 (D.Mass.1964); Randall v. Colby, 190 F.Supp. 319, 341 (N.D.Iowa 1961); Stockholders Pub. Co. v. Smith, 56–1 U.S. Tax Cas. ¶ 9420 (S.D.Cal.1956).

5. I.R.C. § 6322.

6. United States v. Security Trust & Savings Bank, 340 U.S. 47, 53, 71 S.Ct. 111, 114, 95 L.Ed. 53 (1950) (Jackson, J., concurring).

7. Act of July 13, 1866, ch. 184, § 9, 14 Stat. 107. See also Act of March 3, 1865, ch. 78, 13 Stat. 470.

8. United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705 (1893).

9. Act of March 4, 1913, ch. 166, 37 Stat. 1016.

10. Revenue Act of 1939, § 401, 53 Stat. 882.

11. Id.

12. I.R.C. § 6323(b)(2), which originated in Revenue Act of 1964, § 236, 78 Stat. 127.

13. See Rankin & Schatzell v. Scott, 25 U.S. (12 Wheat) 177, 179, 6 L.Ed. 592 (1827). There is a special priority statute, commonly referred to as Section 3466 of the Revised Statutes, which provides as follows:

Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed.

31 U.S.C. § 191 (1976) (amended in 1978; amendment not relevant to this appeal). The record in this case does not indicate that the Debtor is insolvent, and this opinion, therefore, is directed toward the law which obtains in the absence of the insolvency of the taxpayer-debtor.

14. United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954).

15. United States v. Pioneer American Ins. Co., 374 U.S. 84, 88, 83 S.Ct. 1651, 1654, 10 L.Ed.2d 770 (1963). See also United States v. Security

Even mortgages and other contractual security interests, despite their specially favored position under the federal statute, were vulnerable before 1966 to subsequently filed federal tax liens to the extent that the security embraced after-acquired property or involved disbursements (whether optional or obligatory) yet to be made, including foreclosure expenses and other outlays for which a mortgagee normally is entitled to a lien with the same priority as the principal debt.

Plumb, *Federal Liens and Priorities—Agenda for the Next Decade*, 77 Yale L.J. 228, 231 (1967) (footnotes omitted).

### Federal Tax Lien Act of 1966

Congress enacted the Federal Tax Lien Act of 1966 in an effort to conform the lien provisions of the Internal Revenue Code to the concepts developed in the Uniform Commercial Code.[16] Another primary objective was to provide some limited but specific relief from the harshness of the choateness rule for, among others, commercial lenders whose loans and collateral may change daily.[17]

Section 6323 of the Internal Revenue Code, as amended by the Federal Tax Lien Act of 1966, sets forth certain limitations on the validity and priority of federal tax liens imposed by § 6321 of the Internal Revenue Code as against certain persons, including the holder of a security interest in property which is the subject of such a lien. Subsection (c) of § 6323 is the provision designed to provide a safe haven for the holders of security interests arising in certain commercial financing arrangements. Subsection (c) provides, in relevant part, that

*Trust & Savings Bank*, 340 U.S. 47, 49–50, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950) ("The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question. Hence, although a state court's classification of a lien as specific and perfected is entitled to weight, it is subject to reexamination by this Court. On the other hand, if the state court itself describes the lien as inchoate, this classification is 'practically conclusive.' *Illinois v. Campbell*, 329 U.S. 362, 371, 67 S.Ct. 340, 345, 91 L.Ed. 348.").

16. S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* [1966] U.S.Code Cong. & Admin. News, pp. 3722, 3722. *See also* H.R.Rep. No. 1884, 89th Cong., 2d Sess. 1 (1966).

17. S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* [1966] U.S.Code Cong. & Admin. News, pp. 3722, 3729. According to the Senate Report, protection for a security interest arising out of a commercial transactions financing agreement "is afforded only where the loan or purchase is made not later than 45 days after the tax lien filing (unless actual notice or knowledge of the filing is obtained sooner) and only where the inventory, accounts receivable, etc., are acquired before the 45 days have elapsed." The Senate Report states further as follows:

In the case of inventory and accounts receivable financing, it is customary for a business, after establishing a line of credit, to receive advances from time to time as its needs arise. The security in such a case customarily is the inventory, accounts receivable, etc., which the business receives from time to time in the ordinary course of its business. The loan may be secured by these assets (including replacements of the initial assets) or these assets themselves (except inventory) may be sold to the financier. Under present law, a filed tax lien has priority over the rights of the lender or purchaser if the funds are not advanced, or the security purchased, until after the tax lien filing. In addition, it has priority under present law if the initial assets are replaced with assets acquired after the tax lien filing. As a result, under present law for a lender or purchaser to be sure that no tax lien has recently been filed, he must search the records each time before making an additional advance or purchase. The provision added by the bill is designed to keep this obligation within practical bounds by giving the interests arising under the agreements providing for these loans or purchases priority over a filed tax lien if the loans or purchases are made not later than 45 days after the tax lien filing and before the lender or purchaser has actual notice of the filing. In this regard it should be noted that the standard of perfection (i. e., validity against judgment liens) in this regard is the same for a purchaser (including a bona fide purchaser) as it is for the holder of a security interest. This provision thus generally gives an inventory or accounts receivable, etc., financier assurance that his loans or purchases are not inferior to some recently filed tax lien as long as he searches the records at least once every 45 days.

*See also* H.R.Rep. No. 1884, 89th Cong., 2d Sess. (1966).

even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing but which—

(A) is in qualified property covered by the terms of a written agreement entered into before tax lien filing and constituting—

(i) a commercial transactions financing agreement, . . . and

(B) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.

The balance of subsection (c) and subsection (h) define the terms used in subsection (c). Four of those definitions are relevant for our purposes—the definitions of "commercial transactions financing agreement," "qualified property," "commercial financing security" and "security interest." The term "commercial transactions financing agreement" is defined as

an agreement (entered into by a person in the course of his trade or business)—

(i) to make loans to the taxpayer to be secured by commercial financial security acquired by the taxpayer in the

ordinary course of his trade or business,

. . .

but such an agreement shall be treated as coming within the term only to the extent that such loan or purchase is made before the 46th day after the date of tax lien filing or (if earlier) before the lender or purchaser had actual notice or knowledge of such tax lien filing.

The term "qualified property," when used with respect to a commercial transactions financing agreement, is defined to include "only commercial financing security acquired by the taxpayer before the 46th day after the date of tax lien filing." [18] The term "commercial financing security" is defined to mean "(i) paper of a kind ordinarily arising in commercial transactions, (ii) accounts receivable, (iii) mortgages on real property, and (iv) inventory." Finally, subsection (h)(1) of § 6323 defines the term "security interest" as follows:

The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local

---

18. *See* 26 C.F.R. § 301.6323(c)–1(d) (1979), which provides as follows:

(d) *Qualified property.* For purposes of paragraph (a) of this section, qualified property consists solely of commercial financing security acquired by the taxpayer-debtor before the 46th day after the date of tax lien filing: Commercial financing security acquired before such day may be qualified property even though it is acquired by the taxpayer after the lender received actual notice or knowledge of the filing of the tax lien. For example, although the receipt of actual notice or knowledge of the filing of the notice of the tax lien has the effect of ending the period within which protected disbursements may be made to the taxpayer, property which is acquired by the taxpayer after the lender receives actual notice or knowledge of such filing and before such 46th day, which otherwise qualifies as commercial financing security, becomes commercial financing security to which the priority of the lender extends for loans made before he received the actual notice or knowledge. An account receivable (as defined in paragraph (c)(2)(ii) of this section) is acquired by a taxpayer at the time,

and to the extent, a right to payment is earned by performance. Chattel paper, documents of title, negotiable instruments, securities, and mortgages on real estate are acquired by a taxpayer when he obtains rights in the paper or mortgage. Inventory is acquired by the taxpayer when title passes to him. A contract right (as defined in paragraph (c)(2)(i) of this section) is acquired by a taxpayer when the contract is made. Identifiable proceeds, which arise from the collection or disposition of qualified property by the taxpayer, are considered to be acquired at the time such qualified property is acquired if the secured party has a continuously perfected security interest in the proceeds under local law. The term "proceeds" includes whatever is received when collateral is sold, exchanged, or collected. For purposes of this paragraph, the term "identifiable proceeds" does not include money, checks and the like which have been commingled with other cash proceeds. Property acquired by the taxpayer after the 45th day following tax lien filing, by the expenditure of proceeds, is not qualified property.

law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

Under subsection (c) of § 6323, the holder of a security interest competing for priority with a federal tax lien who is able to demonstrate that such security interest meets the requirements of subsection (c) and the related definition in subsection (h) achieves priority for such security interest over the federal tax lien by virtue of the introductory language of subsection (c) which renders the competing tax lien invalid as against such security interest. It is apparent, simply from reading subsections (c) and (h), that the holder of a security interest seeking to establish priority thereunder over a competing tax lien must clear several complex hurdles under such subsections, and the failure to clear any one of them leaves the holder outside the safe haven of subsection (c). In the case before the court, the United States argues that in view of Rice's admission that it did not have any information in its possession by which it could determine the date on which the Debtor acquired the inventory seized by the United States on August 18, 1974, Rice would be unable to carry its burden under § 6323 of proving that the inventory was "qualified property," i. e., property acquired by the Debtor before June 11, 1974 (the 46th day after the filing of the tax lien on April 26, 1974). We agree, and we hold that the security interest of the United States in the seized inventory is, accordingly, not invalid under § 6323 with respect to the security interest of Rice in such inventory. Our holding is based on the clear language of the statute, and is strongly supported by the equally clear legislative history. At least when the inquiry is solely whether an item of inventory is "qualified property," it is not necessary to resort to

notions of "choateness" as a tool for statutory interpretation.[19] In view of our holding, it is also unnecessary to analyze the status of Rice's security interest insofar as the other requirements of § 6323 are concerned, and we express no views with respect thereto.

Our holding with respect to the qualified property status of the seized inventory is compelled not only by the clear language of § 6323(c) but also by this court's holding in *Texas Oil & Gas, supra.* The collateral involved in *Texas Oil & Gas* was an account receivable which was not acquired by the taxpayer-debtor until more than 45 days after the filing of the tax lien. With respect to the status of that account receivable under § 6323(c), this court stated:

It appears clear that Congress contemplated not only that the funds must actually be advanced prior to or within 45 days of the filing of the tax lien, but also that the secured property must be "acquired" within that period:

"The term 'qualified property', when used with respect to a commercial transactions financing agreement, includes only commercial financing security *acquired* by the taxpayer before the 46th day after the date of tax lien filing."

26 U.S.C.A. § 6323(c)(2)(B) [emphasis added]. The Senate Finance Committee in *reporting the 1966 amendments* concluded that " . . . protection is afforded only where the loan or purchase is made not later than 45 days after the tax lien filing . . . and only where the . . . accounts receivable . . . are *acquired* before the 45 days have elapsed." S.Rep. No. 1708 *supra,* U.S.Code Cong. & Admin.News, p. 3729 (1966) [emphasis added]. Although it is not clear from the record whether the bank in the instant case had actually advanced funds to the taxpayer-debtor within the 45 day

---

**19.** *See Aetna Ins. Co. v. Texas Thermal Indus., Inc.,* 591 F.2d 1035, 1038 (5th Cir. 1979); *cf. Texas Oil & Gas Corp. v. United States,* 466 F.2d 1040 (5th Cir. 1972), *cert. denied,* 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 291 (1973) (federal standards of choateness employed as a tool

for statutory interpretation of § 6323 where the collateral was an account receivable). *See also* 86 Harv.L.Rev. 1570 (1973) *and* 27 Sw.L.J. 723 (1973) (both criticizing the approach taken in *Texas Oil & Gas* ).

"grace" period, it is undisputed that none of the accounts receivable came into existence prior to April 13, 1970, 45 days after the filing of the tax lien.

*Texas Oil & Gas*, 466 F.2d at 1049.

■ Rice urges that we construe the "in existence" language contained in the definition of "security interest" in subsection (h) of § 6323 to cover not only the inventory of the Debtor in existence on the date of the filing of the tax lien, but also any inventory which thereafter replaced such inventory. Rice argues that such a construction is particularly appropriate where, as was the case here, there has been only a single advance by the lender. To accept Rice's argument, however, would be to ignore the clear language of subsection (c) which requires that, wholly apart from the date on which the loan is made (which is itself the subject of certain independent requirements under § 6323 concededly met here),[20] the collateral must be "qualified property." It would also be to ignore the legislative history of the Federal Tax Lien Act of 1966 which evidences a clear intent not to give commercial lenders an infinite priority over the United States, but instead to limit such lenders to property acquired by the taxpayer debtor before the 46th day after the filing of the tax lien.[21] Rice says that a decision in favor of the United States in this case will have the effect of requiring a secured lender to check each day to determine whether a federal tax lien has been filed with respect to each of its borrowers. While this may be something of an exaggeration, it is clear that subsection (c) of § 6323 requires a secured lender regularly to monitor the federal tax lien status of its borrowers because only the prompt ascertainment of the existence of a federal tax lien will put the secured lender in a position to protect its interest in the collateral. As this court noted in *Texas Oil & Gas*, "we realize that this disposition does not afford the protection that commercial lenders who deal with after-acquired prop-

erty might prefer." 466 F.2d at 1053. But efforts to improve that protection should be directed to Congress and not to the courts.

## Back to History

■ Since the security interest of Rice in the seized inventory is not entitled to priority over the federal tax lien under § 6323, Rice must demonstrate that it is entitled to priority under the federal law developed prior to the enactment of the Federal Tax Lien Act of 1966. However, it is clear that under the federal law on "choateness" described above, the federal tax lien filed by the United States on April 26, 1974, would be entitled to priority over the security interest of Rice in the inventory seized by the United States on August 18, 1974, because Rice, by its own admission, could not prove that the seized property was in existence and owned by the Debtor on the date the tax lien was filed, which would lead to the conclusion that the security interest of Rice in the seized inventory was not sufficiently choate on the date of the tax lien filing to prevail over the tax lien.[22]

Our conclusion that Rice, having failed to secure a safe haven under § 6323, is left with the law on "choateness" and fails under that law is buttressed by this court's similar conclusion in *Texas Oil & Gas*. Having demonstrated, among other things, that the account receivable in that case did not constitute "qualified property" under § 6323, the court turned to a consideration of the status of the account under the federal law on "choateness":

> In the instant case, it is true that the bank had done all it could do under the Uniform Commercial Code to secure its interest in taxpayer-debtor's accounts receivable. However, that conclusion simply does not answer the case law as it has developed in the area of tax liens. However "complete" a lender's perfection may be under state recording laws and how-

---

**20.** See 26 U.S.C. § 6323(c)(2)(A), (d).

**21.** Refer to note 17 *supra* and accompanying text.

**22.** Refer to note 14 *supra* and accompanying text.

ever "specific" state law might deem that interest to be, it is federal law that determines the extent to which that state determination will protect a private lien from a federal tax lien. It appears clear from the case law that an account receivable not yet "acquired" at the time of the filing of a tax lien because the final transaction creating the account receivable was not yet in existence cannot be considered choate, save for those accounts receivable now protected by section 6323(c).

*Texas Oil & Gas*, 466 F.2d at 1051.[23]

In our case, while Rice may well have done all that it could do under the Texas Business & Commerce Code to perfect its security interest in the Debtor's after-acquired inventory, the security interest of Rice in inventory not yet acquired at the time of the filing of the tax lien cannot be considered choate for federal law purposes, and the federal tax lien prevails over such security interest.

REVERSED and REMANDED with instructions to enter summary judgment for the United States.

---

**23.** Refer to note 15 *supra* and accompanying text.