**DU–MAR MARINE SERVICE, INC.**

v.

**STATE BANK & TRUST COMPANY OF GOLDEN MEADOW, LA., et al.**

**Civ. A. No. 85–5591.**

United States District Court,
E.D. Louisiana.

Oct. 12, 1988.

Dale R. Baringer, Schaneville & Baringer, Baton Rouge, La., for Du–Mar Marine Service, Inc.

Bill Roberts, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant U.S.

H. Harwell Herrin, Golden Meadow, La., for State Bank & Trust Co.

## MEMORANDUM OPINION

MENTZ, District Judge.

This is an interpleader action filed by Du–Mar Marine Service, Inc. ("Du–Mar") to determine which defendant has legal priority to the $36,332.50 in funds deposited by Du–Mar into the registry of the Court. The issue presented in this case is which of the two competing claimants, the United States of America ("United States") by virtue of its tax lien, or State Bank & Trust Company of Golden Meadow ("State Bank"), by virtue of its rights under the Louisiana Accounts Receivable Statute, La. R.S. 9:3101, *et seq.*, are entitled to the interpled fund.

The action was tried to the court on a prior date. Having reviewed the evidence, the memoranda of counsel, the record, and the law, the Court now renders its findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a). To the extent any findings of fact are conclusions of law, they are adopted as such; to the ex-

tent any conclusions of law are findings of fact, they are so adopted.

## FINDINGS OF FACT

### I.

The interpled fund represents monies owed by Du–Mar, a maritime service corporation, for the use of two vessels it hired on an as needed basis. One of the vessels, the M/V HENRY J. LAFONT, SR., was owned by LaMart Marine Service, Inc. ("LaMart No. 1"). The other vessel, the M/V LINCON MARTIN, SR., was owned by LaMart Marine Service No. 2, Inc. ("LaMart No. 2").

### II.

Du–Mar was not aware that the vessels were owned by separate corporations. In fact, Du–Mar was not even aware that LaMart No. 2 existed. All of Du–Mar's business dealings were with LaMart No. 1. The invoices Du–Mar received indicated the name of the vessel which performed the work and were on the letterhead of LaMart No. 1. Du–Mar paid LaMart No. 1 for the use of both vessels.

### III.

LaMart No. 1 and LaMart No. 2 were separate corporations which met once a year for a shareholders' meeting and maintained separate bank accounts. LaMart No. 1's only asset was the M/V HENRY LAFONT, SR. and a 1981 Dodge Ram van. LaMart No. 2's only asset was the M/V LINCON MARTIN, SR.

### IV.

Mr. Lincon Joseph Martin, Jr. was secretary and treasurer of both LaMart No. 1 and LaMart No. 2. He maintained one hundred percent control over both corporations. Though Mr. Martin had letterhead stationery for both corporations, he invoiced all billings through LaMart No. 1. Mr. Martin testified that "it was easier to keep records this way" and had no effect on the customer, since the customer "hired really the vessel more than the corporation." Thus, as long as the vessels were working for the same customer, one invoice was used and the billings went through LaMart No. 1. Mr. Martin stated that if he had a vessel working for one customer and a different vessel working for another customer, then he would use separate invoices with separate corporate headings (presumably the corporate heading corresponding to the name of the vessel being hired). However, since Mr. Martin never did separate jobs, the vessels always being hired by the same customer at any point in time, separate invoices were never used.

### V.

The billing for the use of the vessels was controlled by Du–Mar. Du–Mar would send Mr. Martin a ticket indicating the name of the vessel, the time and hours of service, and the amount which Du–Mar should be charged. Mr. Martin then sent Du–Mar an invoice in that amount on LaMart No. 1 stationery. Accordingly, Du–Mar then issued a check in the amount of the invoice to LaMart No. 1.

### VI.

The Court cannot accept State Bank's contention that Du–Mar never owed LaMart No. 2 any money for the use of the vessels. Approximately half of the total invoice charges to Du–Mar were for work done by the M/V LINCON MARTIN, SR., which was owned solely by LaMart No. 2. As set forth in the Order and Reasons dated September 8, 1987 addressing the cross motions for summary judgment filed by the claimants herein:

> The Government contends that the tendered funds are the result of work performed by LaMart No. 2. If this is so, then the government has priority to these amounts, as State Bank has no claim to those funds, as it has not alleged it is owed a debt by LaMart No. 2.

### VII.

LaMart No. 1 is owed $28,350.00 by Du–Mar for work performed by the M/V HENRY LAFONT, SR.

### VIII.

LaMart No. 2 is owed $26,325.00 by Du–Mar for work performed by the M/V LINCON MARTIN, SR.

### IX.

On November 1, 1983, LaMart No. 1 and LaMart No. 2 each executed a Statement of Assignment of Accounts Receivable wherein they "assigned and intend[ed] to continue to assign accounts receivable to State Bank & Trust Company of Golden Meadow in accordance with the Louisiana Assignment of Accounts Receivable Law (LSA R.S. 9:3101–3110)." The assignments were properly recorded with the Clerk of Court of the Parish of Lafourche, Louisiana on November 9, 1983.

### X.

LaMart No. 1 borrowed $46,332.00 from State Bank in a series of four loans. The dates and amounts of the loans are as follows:

| | |
|---|---|
| April 30, 1985 | $17,160.00 |
| June 7, 1985 | $17,732.00 |
| June 7, 1985 | $ 5,720.00 |
| June 19, 1985 | $ 5,720.00 |

To date, LaMart No. 1 has not paid these loans.

### XI.

The loans to LaMart No. 1 were secured by the general assignment of accounts receivable from LaMart No. 1 and invoices from LaMart No. 1 for work performed shortly before the date of each loan. State Bank also based part of the loans to La-Mart No. 1 on invoices for work performed by the M/V LINCON MARTIN, SR., which was owned by LaMart No. 2.

### XII.

State Bank knew or should have known that the M/V LINCON MARTIN, SR. was owned by LaMart No. 2 and that invoices from the M/V LINCON MARTIN, SR. were not the property of LaMart No. 1. State Bank had previously made a loan to LaMart No. 2, the collateral for which was a second lien on the M/V LINCON MARTIN, SR, and had obtained a general assignment of accounts receivable from La-Mart No. 2.

### XIII.

LaMart No. 1 and LaMart No. 2 failed to pay withholding and FICA taxes owed to the United States for various quarters from 1981 through 1984. Assessments of the taxes were made by the United States against LaMart No. 1 and LaMart No. 2 on June 27, 1983. Notices of federal tax lien evidencing those assessments were filed against LaMart No. 1 and LaMart No. 2 as follows.

### XIV.

Notices of federal tax lien were filed in Lafourche Parish on July 29, 1985 for unpaid withholding and FICA taxes of La-Mart No. 1 for all of 1982, 1983, and 1984, totaling $64,470.07, plus statutory additions thereon as allowed by law.

### XV.

A notice of federal tax lien was filed in LaFourche Parish on March 12, 1984 for unpaid withholding taxes of LaMart No. 2 for the third and fourth quarters of 1982 and the first quarter of 1983 in the amount of $8,736.41. Due to a typographical error the taxpayer's name was spelled "Lamant Marie Service Number 2, Inc." while the taxpayer's identification number and address were stated correctly.

### XVI.

A notice of federal tax lien was filed in Lafourche Parish on January 21, 1985 for unpaid withholding taxes of LaMart No. 2 for the second and third quarters of 1983 in the amount of $5,812.78. This notice of federal tax lien contained the same information as the notice of federal tax lien filed on March 12, 1984, including the typographical error, the correct address, and the correct taxpayer's identification number.

### XVII.

A notice of federal tax lien was filed in Lafourche Parish on July 29, 1985 for un-

paid withholding taxes of LaMart No. 2 for the fourth quarter of 1983 and the first three quarters of 1984 in the amount of $20,476.44. This notice of federal tax lien had the same address and the same taxpayer identification number as the two earlier notices; however, the taxpayer's name was correctly spelled "Lamart Marine Service No. 2, Inc."

### XVIII.

The Mortgagor Index to Mortgages Lafourche Parish, Louisiana shows that the notices of federal tax lien filed on March 12, 1984 and January 21, 1985 against LaMart No. 2 with the misspelled corporate name are on the same page as the notices of federal tax lien with the correct spelling and are separated by only one non-related entry.

### XIX.

The notice of federal tax lien filed on July 29, 1985 for the unpaid tax liabilities of LaMart No. 1 was filed after State Bank had made its loans based, in part, on the invoices from LaMart No. 2.

### XX.

The notice of federal tax lien filed on July 29, 1985 for the unpaid tax liabilities of LaMart No. 2 was filed after State Bank had made its loans based, in part, on invoices from LaMart No. 2.

### XXI.

However, the notices of federal tax lien filed on March 12, 1984 and January 21, 1985 for the unpaid tax liabilities of LaMart No. 2 were filed more than 45 days before the date State Bank made its loans based, in part, on invoices from LaMart No. 2.

### XXII.

As of February 11, 1988, the total outstanding unpaid tax liabilities of LaMart No. 2 for the quarters included in the notices of federal tax lien filed on March 12, 1984 and January 21, 1985 are as follows:

The third quarter of 1982.... $2,813.02
The fourth quarter of 1982 .. $4,606.78
The first quarter of 1983 .... $6,840.59
The second quarter of 1983 .. $3,741.19
The third quarter of 1983.... $5,436.11

### CONCLUSIONS OF LAW

#### I.

This Court has federal question jurisdiction under 28 U.S.C. § 2410 over actions affecting property on which the United States has a lien.

#### II.

■ State law determines the nature and extent of a taxpayer's interest to the interpled funds. Federal law determines the priority of competing liens asserted against the taxpayer's property. *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). Thus, the ranking of a lien under state law is not dispositive. "The state recognized lien must satisify the Federal standards, vague as they may be, as choate, that is, perfected liens." *United States v. Morrison*, 247 F.2d 285, 288 (5th Cir.1957).

#### III.

■ A federal tax lien is enforceable against a debt owed to the taxpayer. *United States v. Newhard*, 128 F.Supp. 805 (D.C.Pa.1955); *United States v. Breihan, et al.*, 4 A.F.T.R.2d (D.C.Tex.1959).

#### IV.

■ A properly filed tax lien primes all equitable claims not recorded prior to the federal tax lien. *Morrison*, 247 F.2d 285.

#### V.

The Court recognizes that each claimant has an interest in the interpled funds. State Bank's interest arises because of its properly recorded assignment of accounts receivable from LaMart No. 1 and LaMart No. 2 and the loans made to LaMart No. 1 which are secured by the assignment from LaMart No. 1. The United States's interest arises by virtue of its tax assessment and notice of federal tax lien on LaMart No. 1 and LaMart No. 2. Thus, the issue in dispute is which claimant has priority to

the interpled funds. As stated previously, priority is determined by federal law. 26 U.S.C. § 6322.

## VI.

■ The federal tax liens for the unpaid tax liabilities of LaMart No. 1 and LaMart No. 2 are effective as of the date of the assessments, June 27, 1983. *See* 26 U.S.C. § 6322. Because tax liens arise on the date of the assessment, they have often been described as a "secret lien." *Rice Investment Co. v. United States*, 625 F.2d 565, 568 (5th Cir.1980).

## VII.

■ Priority between competing liens or claims is determined by the order in which they attach to the property, i.e., first in time is first in right. "When a federal tax lien is one of the liens involved, however, the Supreme Court added a gloss on that principle by requiring that in order to be 'first in time,' the nonfederal lien must first have become 'choate,' i.e., the identity of the lienor, the property subject to the lien, and the amount of the lien must be established beyond any possibility of change or dispute. Further, the determination of whether 'a lien has acquired sufficient substance and has become so perfected as to defeat a later-arising or later-filed federal tax lien' is a matter of federal law. *Id.* (quoting *United States v. City of New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954)).

## VIII.

Congress enacted the Federal Tax Lien Act of 1966, in part, to "provide some limited but specific relief from the harshness of the choateness rule for, among others, commercial lenders whose loans and collateral may change daily," such as liens on accounts receivable. *Id.* at 569 (*see* n. 17 for an explanation of the choateness rule as applied to accounts receivable).

## IX.

Title 26 U.S.C. section 6323(a) provides that though a federal tax lien arises at the time the assessment is made, it shall not be valid against any purchaser, holder of security interest, mechanic's lienor, or judgment lien creditor until notice of the federal lien has been filed in accordance with subsection (f). Section 6323(c) provides special protection for commercial transaction financing agreements and reads, in relevant part, that

> even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing but which—
>> (A) is in qualified property covered by the terms of a written agreement entered into before tax lien filing and constituting—
>> (i) a commercial transaction financing agreement....

The term "commercial transactions financing agreement" is defined as

> an agreement (entered into by a person in the course of his trade or business)—
>> (i) to make loans to the taxpayer to be secured by commercial financing security by the taxpayer in the ordinary course of his trade or business, ...

but such an agreement shall be treated as coming within the term only to the extent that such loan or purchase is made before the 46th day after the date of tax lien filing or (if earlier) before the lender or purchaser had actual notice or knowledge of such tax lien filing.

26 U.S.C. § 6323(c)(2)(A).

## X.

■ LaMart No. 1 assigned its accounts receivable to State Bank on November 1, 1983. State Bank recorded the assignment in Lafourche Parish, Louisiana on November 9, 1983. The federal tax lien was filed on July 29, 1985 for the unpaid tax liability of LaMart No. 1. The four loans by State Bank were made between April 30, 1985 and June 19, 1985. Therefore, State Bank's security interest as to LaMart No. 1 became choate because the property to which the security interest attached was in existence prior to the filing of the notice of federal tax lien.

## XI.

■ LaMart No. 2 assigned its accounts receivable to State Bank on November 1, 1983. State Bank recorded the assignment in Lafourche Parish, Louisiana on November 9, 1983. The first two federal tax liens for the unpaid tax liability of LaMart No. 2 were filed on March 12, 1984 and January 21, 1985. The first of the four loans by State Bank was made on April 30, 1985. Thus, State Bank's security interest as to LaMart No. 2 was NOT choate because the property to which the security interest attached was not in existence prior to, or within 45 days after, the filing of the first two notices of federal tax lien.

## XII.

■ A misspelling of the taxpayer's name does not, in and of itself, render the tax lien invalid. *Richter's Loan Co. v. United States,* 235 F.2d 753 (5th Cir.1956). "The essential purpose of the filing of the lien is to give constructive notice of its existence. The test is not absolute perfection in compliance with the statutory requirement for filing the tax lien, but whether there is substantial compliance sufficient to give constructive notice and to alert one of the government's claim." *United States v. Sirico,* 247 F.Supp. 421, 422 (S.D.N.Y.1965). The notices of tax lien filed on March 12, 1984 and January 21, 1985 were filed in the name of "Lamant Marie Service Number 2, Inc." instead of "LaMart Marine Service No. 2, Inc." Though the name of the corporation was slightly misspelled, LaMart No. 2's taxpayer's identification number and address were typed correctly on both notices. The Court believes that the notices of tax lien were in substantial compliance with the statute and were sufficient to alert one searching the public records of the tax lien on LaMart No. 2.

## XIII.

LaMart No. 1's claim to the interpled fund is $28,350.00. LaMart No. 2's claim to the interpled fund is $26,325.00. Since the work giving rise to the fund was performed concurrently by both corporations, their respective interest in the fund shall be determined proportionately.

## XIV.

State Bank is entitled to $18,839.08 (plus 51.86% of any interest earned on the interpled fund up to the date of disbursement), which is the proportionate share of LaMart No. 1 in the interpled fund.

## XV.

The United States is entitled to $17,-493.42 (plus 48.14% of any interest earned on the interpled fund up to the date of disbursement), which is the proportionate share of LaMart No. 2 in the interpled fund.

Accordingly,

IT IS ORDERED that judgment be entered in favor of State Bank and Trust Company of Golden Meadow in the amount of $18,839.08, plus 51.86% of any interest earned on the interpled fund up to the date of disbursement.

IT IS FURTHER ORDERED that judgment be entered in favor of the United States of America in the amount of $17,-493.42, plus 48.14% of any interest earned on the interpled fund up to the date of disbursement.