SHANTILAL BROTHERS, Ltd., Plaintiff

v.

KMST WHOLESALE, Inc., Defendant

NELSON & ROBERTSON PTY., Ltd., AMERICAN SAMOA GOVERNMENT, DIOCESE OF PAGO PAGO, and AFOA L.S. LUTU, Intervenors

High Court of American Samoa
Trial Division

CA No. 87-88

June 5, 1990

Before REES, Associate Justice, AFUOLA, Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, Gata E. Gurr
For Defendant, Togiola T.A. Tulafono
For Intervenor Nelson & Robertson, John L. Ward II
For American Samoa Government, Aitofele T. Sunia, Assistant Attorney General
For Diocese of Pago Pago and Afoa L.S. Lutu, Charles V. Ala'ilima

This case concerns the existence and priority of liens asserted against the proceeds of a judicial sale of certain equipment belonging to defendant KMST Wholesale, Inc.

*The pertinent facts are as follows:*

On December 1, 1985, Ruby Grisard, as landlord, leased a certain piece of real property in Fagotogo to KMST. Grisard's interest in the property was later transferred to Intervenor Afoa. KMST allegedly began defaulting on the rental payments in September 1989.

On January 1, 1988, the Roman Catholic Diocese of Samoa, Pago Pago, leased KMST a certain structure in Leone. KMST defaulted on this lease and the Diocese brought an action seeking, inter alia, a money judgment for overdue rent. (On March 7, 1990, after all of the other events important to this case, the Diocese secured a judgment in an amount in excess of $4400.)

116

On March 1, 1988, KMST executed a chattel mortgage in favor of Nelson & Robertson to secure indebtedness in excess of $212,000. The chattel mortgage applied, inter alia, to all equipment which then belonged to KMST or which should be later acquired.

Plaintiff Shantilal filed a complaint on September 13, 1988, and obtained judgment on December 6, 1988, in the amount of $41,749.76. A writ of execution on the judgment was entered on December 4, 1989. Certain property of KMST was seized pursuant to the writ and advertised for sale.

On January 22, 1990, following newspaper notice of the pending judicial sale, Nelson & Robertson moved to intervene. The American Samoa Government (ASG) filed notice of a tax lien on January 26, 1990.

By stipulation of the parties, the public auction proceeded as scheduled on January 29, 1990. The proceeds amounted to $25,800.

On February 2, 1990, the landlords (the Diocese and Afoa) moved to intervene.

We discuss the claims of intervenors in reverse order of difficulty:

I. *The Landlords*

The landlords argue that either a contractual or an equitable lien exists. At common law, the landlord-tenant relationship did not give rise to a lien against the tenant's property. Such liens have been created by statute in some jurisdictions and are frequently included in lease agreements. Neither of the lease agreements with which we are now concerned, however, purports to create a lien, and American Samoa has no statutory landlord's lien.

The landlords urge, however, that provisions in their leases giving them the right to re-enter upon the property upon default should be construed to provide a lien upon property located on the premises. This is hardly a straightforward construction of the provisions in question. Counsel for the landlords cites three cases alleged to stand for the proposition that a lien can be implied from such a clause; however, these cases all involved construction of leases which explicitly provided for liens. Nor do the landlords allege any particular circumstances that

117

would justify an "equitable" lien whose only effect would be to give the landlords priority over other creditors whose right to recover against the proceeds is grounded in statute or contract. While such protection for landlords may be desirable, it is up to them to bargain for it or to persuade the Fono to mandate it.

## II. The ASG Lien

American Samoa has adopted the United States Internal Revenue Code. *See* A.S.C.A. §§ 11.0401 et seq. Like the United States, ASG therefore has a lien against the taxpayer's property for any unpaid taxes. 26 U.S.C. § 6321. However, the lien "shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof . . . has been filed by the Secretary." 26 U.S.C. § 6323(a).

Plaintiff Shantilal had already obtained a judgment and a writ of execution and levied on the property of the judgment creditor prior to notice of the tax lien, and so prevails against ASG as a judgment lien creditor with respect to such property. *See United States v. Equitable Life Assurance Society*, 384 U.S. 323, 327-28 (1966), and authorities cited therein; *S & S Gasket Co. v. United States*, 635 F.2d 568 (5th Cir. 1980).

As the "holder of a security interest," viz., a chattel mortgage duly registered, Nelson & Robertson also prevails over ASG, under the express language of 26 U.S.C. § 6323(a), with respect to proceeds of the sale of those items, if any, covered by its mortgage on the date the tax lien became effective. *See generally Rice Investment Co. v. U.S.*, 625 F.2d 565 (5th Cir. 1980).

Because the landlords have no lien on the property, the claim of ASG against the proceeds does prevail over those of the landlords.

## III. The Nelson & Robertson Lien

The general rule of lien priorities is that the first in time is the first in right. *United States v. Equitable Life Assurance Society, supra; Rice Investment Co. v. U.S., supra.* A chattel mortgage may either pass legal title or create a lien. Mortgages in American Samoa are of the lien rather than title variety. A.S.C.A. § 37.1001. Although our statutory law has little to say about chattel mortgages, one territorial statute clearly implies that they also create liens rather than pass title. *See* A.S.C.A.

118

§ 37.1502. Nelson & Robertson's lien was created when it registered its chattel mortgage on March 1, 1988; plaintiff's lien did not come into being until at least December 2, 1988, when it obtained its judgment, and possibly not until much later when it levied upon the property. Nelson & Robertson's lien therefore takes priority over that of plaintiff *with respect to the things mortgaged.*

Unfortunately for Nelson & Robertson, its chattel mortgage does not cover any particular chattel. Instead, it purports to apply to everything KMST owns or may later acquire. Our law provides, however, that no instrument shall be effective to create a security interest unless it "contains a description of the specific article, articles, or land . . . mortgaged." A.S.C.A. § 27.1510(c). This provision specifically prevents the creation of a "general mortgage" such as that attempted by Nelson & Robertson in its contract with KMST, even on property already owned by the debtor. It also has the effect of reinforcing the specific prohibition of § 37.1003 on mortgages of after-acquired real property and fixtures, and of applying the same principle to security interests in personal property.

It is quite possibly true, as counsel for Nelson & Robertson suggests, that this rule reflects an outmoded attitude toward security interests. It is also true that this Court, in deciding cases governed by common law rather than statute, has sometimes adopted "by analogy" rules embodied in widely-adopted statutory provisions such as the Uniform Commercial Code. *See, e.g., Theo H. Davies & Co. v. Reid,* 6 A.S.R.2d 5 (1987). We are not free to adopt such a rule, however, in the face of a contrary rule embodied in the statutory law of American Samoa.

Because the instrument purporting to create a chattel mortgage in favor of Nelson & Robertson did not contain "a description of the specific article [or] articles" being mortgaged, it did not create an interest effective against anyone who did not have actual knowledge of it. A.S.C.A. § 27.1510. There has been no showing that plaintiff Shantilal had any knowledge of the Nelson & Robertson claim at the time it levied upon the property of KMST. The judgment lien of KMST is therefore prior to any interest of Nelson & Robertson in the proceeds of the judicial sale.

The proceeds, in the amount of $25,800 less incidental expenses of the Marshal in the amount of $1,169.75, are substantially less than the judgment in favor of plaintiff Shantilal. The proceeds, after payment of

the Marshal's expenses, shall therefore be distributed to plaintiff. Such distribution will be stayed for ten days or until the ruling on any timely motion for reconsideration of this order, whichever is later.

It is so ordered.