**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 95-10276
(Summary Calendar)
_____

IN THE MATTER OF:    CHARLIE D. DAVIS,

                                                    Debtor.

STATE NATIONAL BANK, BIG
SPRING, TEXAS

                                                    Appellant,

                        versus

CHARLIE D. DAVIS and
INTERNAL REVENUE SERVICE,

                                                    Appellees.

_____

Appeal from the United States District Court
For the Northern District of Texas
(6:94-CV-074-C)
_____

January 8, 1995

Before GARWOOD, WIENER, and PARKER, Circuit Judges.

PER CURIAM:[*]

Debtor-Appellee Charlie D. Davis ("Debtor") filed a petition for

relief under Chapter 7 of the Bankruptcy Code.  In an effort to

_____

[*]Local Rule 47.5 provides:  "The publication of opinions that
have no precedential value and merely decide particular cases on
the basis of well-settled principles of law imposes needless
expense on the public and burdens on the legal profession."
Pursuant to that Rule, the Court has determined that this opinion
should not be published.

reduce his nondischargeable tax liability, the Debtor initiated this action to determine the validity and relative priority of a judgment lien held by Appellant State National Bank, Big Spring, Texas ("Bank") and a tax lien held by Appellee Internal Revenue Service ("IRS").  Concluding that the IRS's federal tax lien is valid and has priority over the Bank's judgment lien, we affirm the decision of the bankruptcy court.

I

FACTS AND PROCEEDINGS

In 1986, the Bank recovered a judgment against the Debtor in the amount of $100,000 plus interest, attorney's fees, and costs.  The Bank filed an abstract of that judgment on December 12, 1986 in Sterling County, Texas.  This abstract of judgment not only failed to show the Debtor's address, but also failed to show the nature of citation and the date and place of service of citation.  In addition, the abstract omitted the rate of interest specified in the judgment, although it did state the amount of daily interest accruing.

On August 13, 1990, the IRS filed a $41,676.67 federal tax lien against the Debtor in Sterling County, Texas, for unpaid 1985 income taxes, penalties, and interest.[1]  Although the Notice of Federal Tax Lien stated that the place of filing was "County Clerk - Personal Property," it was in fact recorded in both the real property and personal property records of Sterling County.

---

[1]  The Notice of Federal Tax Lien filed on August 13, 1990 reflected an unpaid balance of $19,846.07. The amount of the IRS lien at the time the Debtor filed for bankruptcy was $41,676.67.

The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on August 28, 1991. Both the Bank and the IRS timely filed proofs of claim.

Almost a year later, on July 28, 1992, the Bank filed a second abstract of judgment against the Debtor in Sterling County, which abstract was related to the same 1986 judgment. This second abstract was a product of the Chapter 7 proceedings in the bankruptcy court: On May 27, 1992, the bankruptcy court had entered an Agreed Judgment which excepted the Debtor's obligation to the Bank from discharge. The Debtor and the Bank also entered into an Agreement for Payment of Agreed Judgment, which provided that the Debtor would pay the Bank in installments totaling $50,000 in full satisfaction of the judgment. The Bank obtained this second abstract of judgment after the Debtor failed to make the agreed payments.

The bankruptcy court later authorized the sale of real property in Sterling County of which the Debtor was a co-owner. The proceeds of the sale that were attributable to the Debtor's net interest in the property were paid into the registry of the court. Both the Bank and the IRS claim these proceeds, which approximate $13,000.

After determining as a matter of law that the Bank's 1986 abstract of judgment did not create a valid lien under the Texas statute, the bankruptcy court concluded that the government's tax lien entitled the IRS to the contested funds. In addition, the bankruptcy court rejected the Bank's estoppel and "relation back"

3

arguments.  The district court affirmed this decision, and the Bank now appeals to us.

II

ANALYSIS

A.  STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard, and its conclusions of law are reviewed de novo.[2]

B.  VALIDITY AND PRIORITY OF THE LIENS

The priority between a validly filed federal tax lien and a competing judgment lien is governed by the principle that the "first in time is the first in right."[3]  Before a competing state lien is entitled to temporal priority over a tax lien, however, the former must meet the federal standard of perfection, or "choateness."[4]  A state lien is "choate" when the identities of the lienor, the property subject to the lien, and the amount of the lien are established.[5]

The bankruptcy court held that the Bank's 1986 abstract of judgment did not create a valid lien because it failed to comply

---

[2]  In re Midland Indus. Serv. Corp., 35 F.3d 164, 165 (5th Cir. 1994), cert. denied, __ U.S. __, 115 S. Ct. 1359, 131 L.Ed.2d 216 (1995).

[3]  United States v. McDermott, __ U.S. __, 113 S. Ct. 1526, 1528, 123 L.E.2d 128 (1993) (citations and internal quotation marks omitted).  See 26 U.S.C. § 6323(a).

[4]  Rice Inv. Co. v. United States, 625 F.2d 565, 568 (5th Cir. 1980).

[5]  Id. (citing United States v. City of New Britain, 347 U.S. 81 (1954)).

4

with the Texas judgment lien statute.[6]  Accordingly, the bankruptcy court concluded that, as this purported lien was never legally in existence, much less "choate," the tax lien was "first in time" and thus carried the day.

The Bank contends on appeal that this conclusion is in error because Texas law requires only "substantial compliance" with the elements of the statute.[7]  The Bank insists that, as the 1986 abstract of judgment should have charged third parties with notice of the lien notwithstanding the omission of certain statutory requirements, the lien should have attached.  We disagree.

At the time that the Bank filed its 1986 abstract of judgment, Texas Property Code section 52.003 provided:

An abstract of judgment must show:

(4) the defendant's address, or if the address is not shown in the suit, the nature of citation and place of service of citation;

....

(7) the rate of interest specified in the judgment.[8]

None dispute that these required items were not shown on the Bank's 1986 abstract of judgment.

Under Texas law, the mere rendition of a judgment does not create

---

[6]  See TEX. PROP. CODE ANN. § 52.003 (Vernon 1984).

[7]  See Citizens State Bank v. Del-Tex. Inv. Co., 123 S.W.2d 450, 452 (Tex.Civ.App.SQSan Antonio 1938, writ dism'd judgm't cor.).

[8]  TEX. PROP. CODE ANN. § 52.003(a) (Vernon 1984).

5

a lien.[9]  To acquire a lien on real property owned by a judgment debtor, the judgment creditor must take the specified steps necessary to comply with the judgment lien statute.[10]  In addition, the judgment creditor bears the responsibility of ensuring that the clerk of court correctly abstracts the judgment.[11]  Moreover, substantial compliance with the statutory requirements is "<u>essential and mandatory</u> to the <u>creation</u> of the lien itself and is not required solely to ensure that subsequent purchasers are provided notice."[12]

Although substantial compliance with the statute is sufficient to create a valid judgment lien, the Texas courts have construed substantial compliance to allow only a minor deficiency in an element of the abstract.[13]  An abstract that completely omits a required statutory element, on the other hand, does not substantially comply with the statute.[14]  Furthermore, the Texas courts have specifically held that the omission of the defendant's address and citation information on the abstract of judgment

---

[9]  <u>Burton Lingo Co. v. Warren</u>, 45 S.W.2d 750, 751-52 (Tex.Civ.App.SQEastland 1931, writ ref'd).

[10]  <u>Citicorp Real Estate, Inc. v. Banque Arabe Int'l D'Investissement</u>, 747 S.W.2d 926, 929 (Tex. App.SQDallas 1988, writ denied).

[11]  <u>Texas Am. Bank v. Southern Union Exploration Co.</u>, 714 S.W.2d 105, 107 (Tex. App.SQEastland 1986, writ ref'd n.r.e.).

[12]  <u>Citicorp Real Estate, Inc.</u>, 747 S.W.2d at 931 (second emphasis added).

[13]  <u>Id.</u> at 930.

[14]  <u>Id.</u>

prevents the creation of a valid judgment lien.[15]  Therefore, no valid lien was created by the 1986 abstract of judgment. Accordingly, the IRS lien was "first in time" and thus "first in right."

As the omission of the § 52.003(a)(4) element renders the 1986 abstract of judgment ineffectual, we need not consider whether the amount of daily interest accruing listed in the abstract substantially satisfies the statutory requirement regarding interest.

C.  VALIDITY OF IRS LIEN WITH RESPECT TO REAL PROPERTY

One of the blanks to be completed on a Notice of Federal Tax Lien is entitled "Place of Filing."  Although that blank on the Notice of Federal Tax Lien in the instant case reflected that the place of filing was "County Clerk - Personal Property," that Notice was actually filed in <u>both</u> the real property and personal property records of Sterling County.  The Bank nevertheless contends that a federal tax lien must be strictly correct and that the description, "County Clerk - Personal Property," as the place of filing prevents the IRS from having a lien on the proceeds from a sale of <u>real</u> property.  In support of its position, the Bank cites cases invalidating federal tax liens on the basis of misspelling or error in the taxpayer's name.[16]

---

[15]  <u>Id.</u>; <u>Texas Am. Bank v. Southern Union Exploration Co.</u>, 714 S.W.2d 105, 107 (Tex. App.SQEastland 1986, writ ref'd n.r.e.); <u>Allied First Nat'l Bank v. Jones</u>, 766 S.W.2d 800, 802 (Tex. App.SQDallas 1988, no writ).

[16]  <u>E.g.</u>, <u>Haye v. United States</u>, 461 F.Supp. 1168 (C.D. Cal. 1978).

As an initial matter, the IRS responds that, inasmuch as this argument was not raised in either the bankruptcy court or the district court, we should refuse to consider it on appeal.[17] The record is unclear as to whether this particular argument was raised below; yet the record does reflect that an argument was made concerning the place-of-filing designation. Giving the Debtor the benefit of the doubt, we address this argument, but ultimately find it unpersuasive.

Again, a federal tax lien "shall not be valid as against any ... judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary."[18] Section 6323(f) provides that "[t]he form and content referred to in subsection (a) shall be prescribed by the Secretary." The applicable regulations state that the notice must be filed on a Form 668 and that it "must identify the taxpayer, the tax liability giving rise to the lien, and the date the assessment arose."[19]

The sufficiency of a notice of federal tax lien is a question of federal law.[20] Contrary to the Debtor's assertion, to be valid this notice need not be flawless.[21] For, as many courts have stated,

---

[17] See C.F. Dahlberg & Co., Inc. v. Chevron U.S.A., Inc., 836 F.2d 915, 920 (5th Cir. 1988).

[18] 26 U.S.C. § 6323(a).

[19] Treas. Reg. § 301.6323(f)-1(d).

[20] United States v. Brosnan, 363 U.S. 237, 240 (1960).

[21] See Richter's Loan Co. v. United States, 235 F.2d 753, 754-55 (5th Cir. 1956) (holding that a notice of federal tax lien was valid even though the taxpayer's name was erroneously spelled "Freidlander" instead of "Friedlander").

8

"[t]he essential purpose of the filing of the [federal tax] lien is to give constructive notice of its existence. The test is not absolute perfection in compliance with the statutory requirement for filing the tax lien, but whether there is substantial compliance sufficient to give constructive notice and to alert one to the government's claim."[22]

The Notice of Federal Tax Lien here at issue was filed in the proper place and on the proper form. All information concerning the identity of the taxpayer and the tax liability was correct. The only defect alleged by the Debtor is in the description of the place of filing, an item that the regulations do not even require to be stated on a Form 668. Thus, we conclude that the instant notice was filed in substantial, if not full, compliance with the statute and that it was more than sufficient to alert one to the government's claim. Moreover, the Bank's contention that the description of the place of filing on a Notice of Federal Tax Lien trumps the _actual_ place of filing is pure sophistry. We are satisfied that the IRS had a valid lien against the Debtor's real property in Sterling County.

D. RELATION BACK

Not to be deterred, the Bank insists that its formally valid 1992 abstract of judgment cured any defects in the 1986 abstract and "relates back" to 1986, thereby giving the Bank priority. The Bank

---

[22] _E.g._, _Tony Thorton Auction Serv., Inc. v. United States_, 791 F.2d 635, 639 (8th Cir. 1986) (quoting _United States v. Sirico_, 247 F.Supp. 421, 422 (S.D. N.Y. 1965)); _Du-Mar Marine Serv., Inc. v. State Bank & Trust Co._, 697 F.Supp. 929, 935 (E.D. La. 1988).

cites no relevant authority for this assertion, however.

In rejecting this argument by the Debtor, the bankruptcy court held that because noncompliance with the statute kept the Bank's lien from coming into existence in 1986, there can be no relation back to this putative lien. Finding no authority on our own for the Debtor's contention and agreeing with the reasoning of the bankruptcy court, we conclude that the relation back doctrine is inapplicable in this circumstance. Thus, the Bank's 1992 abstract of judgment did not relate back to 1986.[23]

E. COLLATERAL ESTOPPEL

The Bank and the Debtor were parties in a previous bankruptcy case in which Southern States Energy, Inc. was the debtor.[24] The same 1986 abstract of judgment involved in the instant case was also implicated in the Southern States Energy bankruptcy case. The Bank contends that the Debtor could have challenged the validity of the Bank's lien in that earlier case, but elected instead to recognize its efficacy by accepting a particular conveyance pursuant to Southern States Energy's Chapter 11 plan. The Bank argues that the Debtor and the IRS are thus collaterally estopped from claiming now that the 1986 abstract of judgment did not create a valid lien.

Federal law determines the res judicata or collateral estoppel

---

[23] We note that even if Texas law did provide that this abstract of judgment relates back to 1986, this relation back would be ineffective with respect to a validly filed federal tax lien. United States v. Allen, 328 F.2d 377, 379 (5th Cir. 1974).

[24] In re Southern States Energy, Inc., No. 687-060046-JCA-11 (Bankr. N.D. Tex. 1988).

10

effect of prior federal court proceedings, regardless of the basis of federal jurisdiction in either the prior or the present action.[25] The doctrine of collateral estoppel, or issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be again litigated by the same parties in any future lawsuit."[26] The three elements of collateral estoppel are (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue must have been a necessary part of the judgment in the prior action.[27]

In addition to the fact that the IRS was not a party to that previous action, the second element of collateral estoppel is not satisfied because the validity of the Bank's 1986 abstract of judgment was not actually litigated. Under these circumstances, we agree with the bankruptcy court that neither the Debtor nor the IRS is collaterally estopped from challenging the validity of the 1986 abstract of judgment.

For the foregoing reasons, the judgment of the bankruptcy court is

AFFIRMED.

---

[25] Avondale Shipyards, Inc. v. Insured Lloyd's, 786 F.2d 1265, 1269 n.4 (5th Cir. 1986).

[26] RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1290 (5th Cir. 1995) (quoting Ashe v. Swenson, 397 U.S. 436, 443, 90 S. Ct. 1189, 1194, 25 L.E.2d 469 (1970)).

[27] Id.