**METROPOLITAN NATIONAL BANK, James M. Oberlies and Robert E. Ryan, Plaintiffs–Appellees,**

v.

**UNITED STATES of America, Defendant–Appellant.**

No. 89–4710
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

May 30, 1990.

Gary R. Allen, Chief, Appellate Sec., Tax Div., Dept. of Justice, Kimberly Stanley, William S. Estabrook, George Phillips, U.S. Atty., U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Woodrow W. Pringle, III, Gulfport, Miss., for plaintiffs-appellees.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The United States appeals from the district court's judgment holding that the United States' perfected tax lien, filed against three parcels of real property owned by the taxpayer, Weaver & Sons, Inc., was not entitled to priority over the interests claimed in the property by the appellees, Metropolitan National Bank (the "Bank"), James M. Oberlies, and Robert E. Ryan. 716 F.Supp. 946. We hold that the appellees were not entitled to priority under section 6323(a) of the Internal Revenue Code, and we therefore reverse the judgment of the district court and remand the case for further proceedings.

I

The facts were stipulated by the parties. On February 23, 1978, Weaver & Sons, Inc. (the "taxpayer"), by its president, S. Albert Weaver, executed a deed of trust in favor of First State Bank and Trust, the prede-

cessor of appellee Metropolitan National Bank. The deed of trust recited that the taxpayer was indebted to the Bank in the amount of $400,000, and listed certain real property owned by the taxpayer located in Gulfport, Mississippi, as security for the indebtedness. The deed of trust designated Robert L. Taylor as trustee for the lender, and Robert L. Taylor, in his capacity as a notary public, acknowledged the signature of the grantor's president. The deed of trust was filed and recorded by the Chancery Clerk's office in Harrison County, Mississippi on February 24, 1978.

On February 23, March 2, March 9, March 16, and June 2, 1987, assessments were made against the taxpayer for unpaid federal withholding, Federal Insurance Contributions Act (FICA), and Federal Unemployment Tax Act (FUTA) taxes. Notices of the federal tax liens resulting from these assessments were enrolled with the Harrison County Chancery Clerk's office on May 7 and August 27, 1987. The unpaid balance of these assessments totaled $195,621.61, plus interest and statutory additions to tax.

The taxpayer defaulted in payment of its obligation to the Bank, and subsequently filed a Chapter 7 bankruptcy petition. Although none of the papers relating to the taxpayer's bankruptcy are contained in the record before us, the appellees' brief states that the taxpayer's bankruptcy petition was filed on August 19, 1987 and that the Internal Revenue Service ("IRS") filed a proof of claim dated November 24, 1987. At the time the taxpayer defaulted, it owed $268,833.55 on the loan secured by the deed of trust.

On March 8, 1988, the taxpayer executed a corrected deed of trust in favor of the Bank's predecessor institution in the amount of $400,000, secured by the subject property. The corrected deed of trust was properly acknowledged and recorded in the Harrison County Chancery Clerk's office on March 9, 1988.

The bankruptcy court lifted the automatic stay, authorizing the Bank to repossess and foreclose upon the subject property. Notices of foreclosure were posted in the county courthouse, published in the local newspaper, and sent to the IRS by certified mail. A nonjudicial foreclosure sale was held on April 19, 1988, at which the Bank, for $103,600, and appellee Robert E. Ryan, for $31,000, each purchased a portion of the subject property. Thereafter, the Bank conveyed a portion of the property it had purchased in the foreclosure sale to appellee James M. Oberlies. The IRS took no action to stop the foreclosure, or to prevent the sale of the property to the Bank or to Ryan and Oberlies.

## II

The appellees brought this action against the United States under 28 U.S.C. § 2410, seeking to quiet title to the property. The United States counterclaimed, joining the taxpayer as an additional defendant, seeking to foreclose its federal tax liens against the subject property and to collect $195,621.65, the outstanding tax liability of the taxpayer. On cross motions for summary judgment, the district court granted summary judgment in favor of the appellees. The district court held that the original deed of trust was improperly acknowledged and that, even though the deed of trust was recorded, because the defect in the acknowledgment was apparent on the face of the deed, the recordation of the deed did not provide constructive notice to subsequent creditors that the property was encumbered. Nevertheless, the court held that, even though the deed was improperly acknowledged and should not have been recorded, the deed "provided actual notice to anyone who cared to review the records of the Chancery Clerk." The district court did not hold, however, that agents of the United States had in fact reviewed the county records prior to filing the notices of federal tax liens against the taxpayer, or that the United States possessed any information sufficient to place it on "inquiry notice" of the deed. Finally, the district court concluded that the United States' tax lien was not entitled to priority over the Bank's interest because, under state law, the Bank held equitable title to the property by virtue of the original defective deed

of trust, and the United States had actual notice of such equitable title. Thus, when the Bank foreclosed upon the property in the non-judicial sale, the district court held that the United States' junior tax lien was extinguished under the provisions of Internal Revenue Code section 7425(b). The United States appeals.

## III

### A

■ Under 26 U.S.C. § 6321, the amount of a delinquent taxpayer's liability constitutes a lien in favor of the United States upon all of the taxpayer's property and rights to property, whether real or personal. The lien imposed by § 6321 is effective from the date of assessment of the tax, and continues until the liability is satisfied or becomes unenforceable by reason of lapse of time. 26 U.S.C. § 6322. The question whether and to what extent a taxpayer has "property" or "rights to property" to which the tax lien attaches is determined under the applicable state law. *United States v. Rodgers*, 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983). It is undisputed in this case that the taxpayer owned, or had rights to, the subject property to which the federal tax liens attached.

■ Once it has been determined under state law that the taxpayer owns property or rights to property, federal law controls for the purpose of determining whether an attached tax lien has priority over competing liens asserted against the taxpayer's property. *Rodgers*, 461 U.S. at 683, 103 S.Ct. at 2137. "When a third party also claims a lien interest in the taxpayer's property, the basic priority rule of 'first in time, first in right' controls, unless Congress has created a different priority rule to govern the particular situation." *Texas Commerce Bank–Fort Worth, N.A. v. United States*, 896 F.2d 152 (5th Cir.1990). Section 6323 of the Internal Revenue Code, as amended by the Federal Tax Lien Act of 1966, governs the validity and priority of federal tax liens imposed by § 6321 against "certain persons." The appellees rely on the special priority rules of subsection (a)

of § 6323, which provides, in pertinent part, that a federal tax lien shall not be valid against any "holder of a security interest" until notice of the tax lien has been filed. Thus, the respective priorities with respect to federal tax liens and competing claims that are protected under § 6323(a) are dependent upon which claim is perfected "first in time." Both parties agree that, if the Bank was a "holder of a security interest" at the time the United States filed its federal tax liens, the appellees' interests are entitled to priority over the federal tax liens and that the tax liens were thus extinguished in the foreclosure sale.

The definition of "security interest" is found in 26 U.S.C. § 6323(h)(1):

> The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability.

A security interest exists only when the lienholder satisfies two requirements:

> (A) if, at such time the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

Because the subject property is in existence and the Bank parted with money in return for the deed of trust, the Bank's interest in the subject property by virtue of the original deed of trust is entitled to priority over the subsequently filed federal tax lien under § 6323(a) if, as a result of filing the original deed of trust, the Bank is "protected under local law against a subsequent judgment lien arising out of an unsecured obligation." 26 U.S.C. § 6323(h)(1). The United States argues that the district court erred in holding that the Bank is a "holder of a security interest" within the meaning of § 6323(a) because the Bank's interest was not protected under Mississippi law against a subsequent judgment lien arising out of an unsecured obligation, and thus, there was no security interest in existence, within the meaning of § 6323(h)(1),

at the time of the filing of the federal tax liens.

## B

Because the corrected deed of trust was not filed until after the federal tax liens were filed, the issue before us is whether the Bank held an interest under the original deed of trust that was protected under Mississippi law against a subsequent judgment lien arising out of an unsecured obligation.

Under § 6323(h)(1), a security interest exists only if "the interest is protected under local law against a subsequent judgment lien arising out of an unsecured obligation." The House Committee Report states with reference to § 6323(h)(1) that:

[A] security interest becomes protected against a subsequent judgment lien on the date on which all actions required under local law to establish the priority of the security interest against such a judgment lien have been taken, or, if later, the date on which all such actions are deemed effective, under local law, to establish such priority.

H.R.Rep. No. 1884, 89th Cong., 2d Sess. 49 (1966).

As we explain below, our examination of the relevant Mississippi cases and statutes convinces us that the Bank's interest under the original deed of trust would not have been entitled to protection against a subsequent judgment lien arising out of an unsecured obligation unless such a judgment lien creditor had actual notice or knowledge

of the defectively acknowledged deed of trust.[1]

## (1)

Under Mississippi law, all deeds of trust are "void as to all creditors and subsequent purchasers for a valuable consideration without notice, unless they be acknowledged or proved and lodged with the clerk of the chancery court of the proper county, to be recorded...." Miss.Code Ann. § 89–5–3 (1972). "But as between the parties and their heirs, and as to all subsequent purchasers with notice or without valuable consideration, said instruments shall nevertheless be valid and binding." *Id.* In *Burkett v. Peoples Bank of Biloxi,* 225 Miss. 291, 294, 83 So.2d 185, 187 (1955), the Mississippi Supreme Court held that this statute "applies with as much force to a creditor obtaining a lien by judgment as it does to a subsequent purchaser or encumbrancer; and creditors without notice and subsequent purchasers for value without notice are on the same footing and are protected to the same extent."

A deed of trust is not eligible for recordation unless it is properly acknowledged, and an instrument that does not contain a proper acknowledgment does not impart constructive notice to creditors or bona fide purchasers, pursuant to Miss. Code Ann. § 89–3–1 (1972):

[A] written instrument of or concerning the sale of lands ... shall not be admitted to record in the clerk's office unless the execution thereof be first acknowledged or proved, and the acknowledg-

1. Other courts have taken two different approaches in determining the kind of protection Congress contemplated that a security interest must have in order to be "protected under local law against a subsequent judgment lien." One line of cases applies the "subjective knowledge lien creditor test," and places the United States in the shoes of a subsequent judgment lien creditor. Under those cases, if the United States obtains actual or constructive knowledge of the competing nonfederal interest prior to filing its federal tax liens, and if, under local law a judgment lien creditor is protected only if he is without actual or constructive knowledge of a prior interest, the tax lien is not entitled to priority over the nonfederal interest. *See, e.g., United States v. Ed Lusk Constr. Co.,* 504 F.2d 328, 331 (10th Cir.1974); *United States v. Trigg,*

465 F.2d 1264, 1268–69 (8th Cir.1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973). The other line of cases applies a "hypothetical judgment lien creditor test" that focuses on the protection state law gives to the security interest against other hypothetical lien creditors. Under that test, the question is whether the security interest is protected under local law against any hypothetical judgment lien creditor that might arise, whether or not the government has knowledge of the competing nonfederal interest. *See, e.g., Dragstrem v. Obermeyer,* 549 F.2d 20, 25–27 (7th Cir.1977). We do not need to decide which test should apply in this case. The district court applied the "subjective knowledge" test, and both parties have assumed the applicability of that test in their presentation of the case to this court.

ment or proof duly certified by an officer competent to take the same in the manner directed by this chapter; and any such instrument which is admitted to record without such acknowledgment or proof shall not be notice to creditors or subsequent purchasers for valuable consideration.

 It is undisputed, and the district court correctly held, that the original deed of trust dated February 23, 1978 was improperly acknowledged by the trustee named in the deed. *See Holden v. Brimage*, 72 Miss. 228, 229–30, 18 So. 383, 383 (1894) (an acknowledgment to a trust deed taken before an officer who is himself trustee therein, with power to sell to pay debts, is void and does not entitle the deed to be recorded). Under Mississippi law neither a grantee designated by a deed of trust, nor the trustee designated to act for the grantee, can properly acknowledge a deed of trust.

> Under Mississippi law, the taking of an acknowledgment is a judicial or quasi-judicial rather than a ministerial act, and ... this act cannot be performed by a grantee in the deed, or by one who, though not a grantee, is the procuring cause of the conveyance or has a financial or beneficial interest in the transaction....
>
> It would be against public policy to permit a grantee, mortgagee, or trustee, or other person beneficially interested in the transaction to take an acknowledgment to an instrument in which he is named as a party or has a beneficial interest. The object of the law is to prevent the perpetration of fraud, and the policy of the law seems to be that the officer taking the acknowledgment must not be in such relationship to the grantee that there shall exist any temptation for the officer to do aught but his duty impartially.

*Mills v. Damson Oil Corp.*, 686 F.2d 1096, 1102–03 (5th Cir.1982) (quoting 1 *Delvin on*

*Real Estate and Deeds*, § 477d (3d Ed. 1911)). The acknowledgment taken by the trustee in this case was thus void.[2] *Jones v. Porter*, 59 Miss. 628 (1882) (where the acknowledgment of a grantor was taken by the husband of the grantee, who was the procuring cause of the conveyance, the acknowledgment was void). Because the acknowledgment was void, the deed of trust was not eligible for recordation and, even though the deed was recorded, it nevertheless did not impart constructive notice to creditors under Miss.Code Ann. § 89–3–1. *See also Holden v. Brimage*, 72 Miss. at 229–30, 18 So. at 383; *Wasson v. Connor*, 54 Miss. 351, 352–53 (1877) (where grantee acknowledged grantor's signature, "[t]he deed never having been legally acknowledged, [it] was, of course, improperly recorded, and it afforded notice to nobody").

In *Mills v. Damson Oil Corp.*, this court stated that "[i]t is well settled in Mississippi that constructive notice is not imparted to bona fide purchasers by recording a defectively acknowledged deed." 686 F.2d at 1103–04 (citing *Ligon v. Barton*, 88 Miss. 135, 40 So. 555 (1906); *Elmslie v. Thurman*, 87 Miss. 537, 40 So. 67 (1905); *Smith v. McIntosh*, 176 Miss. 725, 170 So. 303 (1936)). The court noted, however, that the cited cases, as well as most of the other cases that describe the nature of the defect involved, concern patent defects, i.e., "defects which are apparent on the face of the acknowledgment." *Mills*, 686 F.2d at 1104. The defect in *Mills* was "entirely latent" because there was "nothing in the deed or its acknowledgment to indicate that the named grantee, Lurline Daws, and S.B. Daws, who took the acknowledgment, were related to each other, or, indeed, that either was married." *Id.* Because only one Mississippi case, *Roebuck v. Bailey*, 176 Miss. 234, 166 So. 358 (1936), discussed the effect of a latent defect in an acknowledgment on bona fide purchasers, and because in that case the Mississippi court recognized a potential distinction between latently and pat-

---

**2.** Although the acknowledgment was void, it does not follow that the deed itself was void. Pursuant to Miss.Code Ann. § 89–5–3, a deed that is neither acknowledged nor recorded is "nevertheless valid and binding" as between the parties and their heirs, and as to all subsequent purchasers (and creditors) with notice or without valuable consideration.

ently defective acknowledgments, this court certified the following question to the Mississippi Supreme Court:

> Whether a defectively acknowledged and recorded deed imparts constructive notice if the defect in the acknowledgment is entirely latent?

*Mills*, 686 F.2d at 1114. The Mississippi Supreme Court answered "yes." *Mills v. Damson Oil Corp.*, 437 So.2d 1005, 1006 (Miss.1983).

Nothing in the Mississippi Supreme Court's answer to the certified question in *Mills* casts any doubt on the cases involving defectively acknowledged deeds in which the defects are patent. Those cases hold that the recording of such defectively acknowledged deeds does not impart constructive notice to bona fide purchasers. *See Mills*, 686 F.2d at 1103–04 and cases cited therein; *see also Cotton v. McConnell*, 435 So.2d 683 (Miss.1983) (a deed with a defective acknowledgment is not eligible for recordation, and is not effective as to third parties, under § 89-3-1, but it is wholly effective between the parties to it). The original deed of trust in this case names Robert L. Taylor as trustee, and Robert L. Taylor acknowledged the signature of the grantor. Thus, it is clear that the defect in the acknowledgment is patent, and the district court correctly held that the deed did not give constructive notice to subsequent bona fide purchasers and creditors. We therefore conclude that, under Mississippi law, the recordation of the defectively acknowledged deed of trust did not impart constructive notice, and thus did not protect the Bank's interest under the deed of trust against a subsequent judgment lien creditor in the absence of actual notice to such a subsequent judgment lien creditor.

### (2)

The district court held that, although the recordation of the defective deed did not impart constructive notice, it could impart actual notice "to anyone who cared to review the records of the Chancery Clerk." The district court then held that the United States did have actual notice, apparently because IRS agents could have discovered the deed by reviewing the county land records. The United States argues that the district court's holding that the United States had actual notice of the deed is unsupported by the record, and contends that the district court confused the notion of constructive notice with actual notice in its holding that actual notice is imparted to third parties by the mere recordation of a defective deed of trust.

■ Under Mississippi law, a prior deed, whether recorded or unrecorded, is good against a subsequent purchaser or creditor with actual notice of it. *Dixon & Sharkey v. Lacoste*, 9 Miss. 70, 107 (1843). In addition, a recorded deed that is not acknowledged is valid against "one who sees upon the record and reads an instrument improperly recorded, because not acknowledged or proved as required by law." *Woods v. Garnett*, 72 Miss. 78, 16 So. 390, 391 (1894). In order to have "actual notice," a party must be "aware of the nature and purposes of the deed." *Bass v. Estill*, 50 Miss. 300, 306 (1874). Actual notice is defined by Black's Law Dictionary (5th ed. 1979) as "such notice as is positively proved to have been given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry."

■ The appellees contend, and the district court held, that the United States had actual notice because the deed was recorded and could have been located had the United States searched the records. This argument confuses the concepts of actual notice and constructive notice. The mere recording of a deed does not provide *actual* notice to strangers to a transaction who are not in possession of facts that would place them on inquiry notice. Rather, the primary purpose of recording is to impart *constructive* notice.

■ The appellees contend, however, that the United States had a "duty to inquire" because its agents had knowledge of sufficient facts to place it upon inquiry notice to check the title to the subject property. "Inquiry notice," as recognized in

Mississippi, arises when a party has actual notice or knowledge of facts that would lead a reasonably prudent person to question the sufficiency of title to property. *E.g., Burkett v. Peoples Bank of Biloxi,* 225 Miss. 291, 83 So.2d 185, 188 (1955). A party who has inquiry notice "is charged with notice of all those facts which could or would be disclosed by a diligent and careful investigation." *Id.* Under Mississippi law, a party is not on inquiry notice from the mere recordation of a deed evidencing an interest in property. *C & D Investment Co. v. Gulf Transport Co.,* 526 So.2d 526, 530 (Miss.1988).

 In support of their position that the United States had a duty to inquire, the appellees argue, without any citation of authority, that the fact that the taxpayer had not paid its taxes should have provided notice to the United States that the title to any property owned by the taxpayer would be subject to other liens or problems. We disagree. The fact that the taxpayer was delinquent in its federal tax obligations created no inferences concerning the taxpayer's title to any particular property and falls short of the type of information necessary to place the United States on inquiry notice. We also reject the appellees' argument that the taxpayer's filing of a petition in bankruptcy should have led the United States to conduct an investigation that would have resulted in the discovery of the Bank's deed of trust. We need not consider whether the taxpayer's filing of its bankruptcy petition was sufficient to put the IRS on inquiry notice because the record contains absolutely no factual support for the appellees' argument. For example, the record does not indicate when the United States received notice of the filing of the bankruptcy petition, or whether it received such notice prior to the filing of its federal tax liens.

We conclude that the record does not support the district court's holding that the United States had actual notice of the defective deed of trust. The record contains no evidence indicating that the United States was aware of the deed of trust prior to the time it filed its federal tax liens, or that it possessed any knowledge of circumstances that would have put it on inquiry which, if pursued, would have led it to actual knowledge of the defective deed of trust. Although the district court's statement that the defective deed of trust could give actual notice "to anyone who cared to review the records of the Chancery Clerk" is correct as far as it goes, there is no evidence that any agent of the United States reviewed the records of the Harrison County Chancery Clerk, and, under the facts in the record, the United States did not have inquiry notice of the existence of the deed.

(3)

The district court further held that the defectively acknowledged deed of trust gave the Bank "equitable title" sufficient to defeat the claims of "a subsequent purchaser or party coming after the document in question, who has notice of the questionable document." Even if we assume that the defectively acknowledged deed of trust gave the Bank "equitable title," the United States, as we have already noted, did not have notice of the defectively acknowledged deed of trust.

We reject the appellees' argument that, when the defectively acknowledged deed was recorded, the United States received constructive notice of the Bank's equitable interest because, as we have already held, the recordation of the defectively acknowledged deed did not impart constructive notice to subsequent creditors under Mississippi law. We therefore conclude that, under Mississippi law, the Bank's interest in the property under the defectively acknowledged deed of trust was not "protected by state law against a subsequent judgment lien creditor." The district court therefore erred in holding that the Bank is a "holder of a security interest" with respect to the property within the meaning of 26 U.S.C. § 6323(h)(1). Thus, the Bank is not entitled to the protection of § 6323(a).[3]

---

**3.** In *Aetna Ins. Co. v. Texas Thermal Industries, Inc.,* 591 F.2d 1035, 1038 (5th Cir.1979), this court held that the Federal Tax Lien Act of 1966 was intended to supplant the federal common

C

The district court's holding that the federal tax lien was extinguished in the foreclosure sale of the property under the provisions of 26 U.S.C. § 7425(b) is based on its erroneous conclusion that the tax liens were junior to the Bank's lien. As we have already held, the Bank's lien did not prime the federal tax liens. Section 7425(b) provides that, even if the government's lien is inferior under state law, it will not be discharged by the foreclosure sale unless the proper type of notice is given to the United States. *Myers v. United States*, 647 F.2d 591, 596–97 (5th Cir.1981). It is undisputed that the United States was properly notified of the foreclosure sale by the Bank. Thus, the sale has "the same effect with respect to the discharge or divestment of such lien ... of the United States, as may be provided with respect to such matters by the local law of the place where such property is situated." 26 U.S.C. § 7425(b)(2). As this court held in *United States v. Boyd*, 246 F.2d 477, 483 (5th Cir.), *cert. denied*, 355 U.S. 889, 78 S.Ct. 261, 2 L.Ed.2d 188 (1957), under Mis-

sissippi law, a nonjudicial sale, with proper notice to the United States, cuts off the government's lien only if the tax lien is *junior* to the nonfederal lien being foreclosed. *See also Peoples Bank & Trust Co. v. L & T Developers, Inc.*, 434 So.2d 699 (Miss.1983). We therefore hold that the district court erred in concluding that the senior tax liens of the United States were discharged by the Bank's nonjudicial foreclosure sale.

For the foregoing reasons, the judgment of the district court is REVERSED, and the case is REMANDED to the district court for further proceedings.

REVERSED AND REMANDED.

---

law with respect to "tax lien priority questions as to which that statute provides an unambiguous federal answer." In *Texas Commerce Bank—Fort Worth, N.A. v. United States*, 896 F.2d 152, 161 n. 8 (5th Cir.1990), however, another panel of this court has recently noted that there is an apparent conflict between *Aetna* and two earlier decisions of this court, *Rice Investment Co. v. United States*, 625 F.2d 565, 572 (5th Cir.1980) and *Texas Oil & Gas Corp. v. United States*, 466 F.2d 1040, 1053 (5th Cir.1972), *cert. denied sub nom., Pecos County State Bank v. United States*, 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973). In *Rice* and *Texas Oil*, the court, after concluding that nonfederal liens were not entitled to priority under the Tax Lien Act of 1966, proceeded to examine the question of priority under pre–1966 common law. We note that *Aetna* involved a nonfederal lien that was clearly entitled to priority under the Tax Lien Act and in that respect may be distinguishable from the nonfederal liens involved in *Rice* and *Texas Oil*.

In the case before us, the statute provides a nonambiguous federal answer to the priority. It is unnecessary for us to resolve any conflict between *Aetna, Rice,* and *Texas Oil* in this case because, even if we examine the question of priority under pre–1966 federal common law, the answer is the same. Pre–1966 federal common law requires that the competing nonfederal

lien be not only first in time but "choate" as well. A nonfederal lien is choate when "the identity of the lienor, the property subject to the lien, and the amount of the lien are established beyond any possibility of change or dispute." *Rice Investment*, 625 F.2d at 568. The question whether a lien has acquired sufficient substance and has become so perfected as to defeat a later-arising or later-filed federal tax lien is governed by federal law. *Id.*

Although the deed of trust identifies the lienor and describes the property subject to the lien, the amount of the lien was not established "beyond all possibility of change or dispute" at the time the notices of tax liens were filed. The deed of trust secured not only the $400,000 loan, but also "such future and additional advances as may be made to the grantor," as well as "all debts, obligations, or liabilities, direct or contingent, of the grantor ... to the beneficiary, whether now existing or hereafter arising at any time before actual cancellation of this instrument on the public records of mortgages and deeds of trust, whether the same be evidenced by note, open account, over-draft, endorsement, guaranty or otherwise." Because the deed of trust had not been cancelled at the time the IRS filed the notices of tax liens, the amount of the Bank's lien, under the express terms of the deed of trust, was subject to a "possibility of change or dispute" and thus was not perfected, or "choate," under pre–1966 federal common law.