# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 17, 2010

No. 09-60193

Charles R. Fulbruge III
Clerk

In the Matter of: CONDOR INSURANCE LIMITED, in Official Liquidation,

Debtor

---

RICHARD FOGERTY, in capacity as Joint Official Liquidator of Condor Insurance Limited; WILLIAM TACON, in capacity as Joint Official Liquidator of Condor Insurance Limited,

Appellants

v.

PETROQUEST RESOURCES INC.; HARVEY MILAM; BYRON TYGHE WILLIAMS; ROSS N. FULLER; T. ALAN OWEN; INTERCONTINENTAL DEVELOPMENT AND INVESTMENT CORPORATION; GYMNOGYPS MANAGEMENT, INC.; FINPAC HOLDINGS, INC.; CONDOR GUARANTY, INC.,

Appellees

---

Appeal from the United States District Court
for the Southern District of Mississippi

---

Before HIGGINBOTHAM, WIENER, and GARZA, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

No. 09-60193

This appeal concerns the jurisdiction of a bankruptcy court to offer avoidance relief under foreign law in a Chapter 15 bankruptcy proceeding. We hold that the bankruptcy court has that authority and reverse the judgment of the district court dismissing for want of jurisdiction.

I

Condor Insurance Ltd., a Nevis corporation, was in the insurance and surety bond business. On November 27, 2006, a creditor filed a winding up petition in Nevis, much like a Chapter 7 proceeding under United States law. The petition was granted and Richard Fogerty and William Tacon were appointed Joint Official Liquidators.

Fogerty and Tacon, as foreign representatives, filed a Chapter 15 bankruptcy proceeding in Mississippi contending Condor Insurance fraudulently transferred over $313 million in assets to Condor Guaranty, Inc. to put them out of the reach of creditors during the Nevis proceeding. Chapter 15 permits foreign representatives of a foreign insolvency proceeding to seek assistance from U.S. courts in an ancillary proceeding once the foreign proceeding is recognized by the bankruptcy court as a foreign main or nonmain proceeding under the Chapter.[1] The bankruptcy court recognized the Nevis winding up proceeding as a foreign main proceeding and the foreign representatives filed an adversary proceeding alleging Nevis law claims against Condor Guaranty to recover the assets.

Condor Guaranty moved to dismiss the proceeding pursuant to Rule 12(b)(1) or alternatively Rule 12(b)(6) as avoidance actions only available through a Chapter 7 or 11 proceeding. As Condor Insurance is classified as a

---

[1]L ief M. Clark, Ancillary and Other Cross-Border Insolvency Cases Under Chapter 15 of the Bankruptcy Code: A Collier Monograph §5 (2008).

2

No. 09-60193

foreign insurance company, it is prohibited from filing a Chapter 7 or 11 case.[2]
The bankruptcy court dismissed the proceeding and the district court affirmed.
The foreign representatives now appeal.

## II

This court reviews de novo a district court's dismissal pursuant to Federal
Rules of Civil Procedure 12(b)(1) or 12(b)(6).[3]   28 U.S.C. § 1334 grants
jurisdiction to district courts for "all cases under title 11"—the Bankruptcy
Code.[4]   There is no question that the bankruptcy court has jurisdiction to
recognize the Nevis proceeding as a foreign main proceeding.  Our question is
whether the exceptions listed in section 1521(a)(7) to the relief available in the
ancillary proceeding exclude not only avoidance actions under U.S. law but also
exclude reliance upon domestic law of the foreign main proceeding.[5]

## III

"In a statutory construction case, the beginning point must be the
language of the statute, and when a statute speaks with clarity to an issue
judicial inquiry into the statute's meaning, in all but the most extraordinary
circumstance, is finished.  The statute must be read as a whole, and only if the
language is unclear [does the court] turn to statutory history."[6]  "A statute is

---

[2] 11 U.S.C. § 109(b) & (d).

[3] *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009).

[4] 28 U.S.C. § 1334(a).

[5] 11 U.S.C. § 1521(a)(7).

[6] *McLaurin v. Noble Drilling (U.S.) Inc.*, 529 F.3d 285, 288 (5th Cir. 2008).

No. 09-60193

ambiguous if it is susceptible to more than one reasonable interpretation or more than one accepted meaning."[7]

Our interpretive task in part guided by the circumstance that Chapter 15 implements the United Nations Commission on International Trade Law (UNCITRAL) Model Law on Cross-Border Insolvency.[8] Chapter 15 directs courts to "consider its international origin, and the need to promote an application of th[e] chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions" in interpreting its provisions.[9]

Prior to UNCITRAL's work on the Model Law, inter-jurisdictional collaboration in an international bankruptcy case depended on the openness of particular national courts, providing a reticulated pattern of cooperation, with U.S. courts often being more open to cooperation than foreign tribunals.[10] Unfortunately, this nigh unilateral effort by the United States did not provide the "commercial predictability" that could be supplied by uniform international rules for cooperation between jurisdictions.[11] In short, while parties to a foreign bankruptcy proceeding could often obtain assistance in U.S. courts, parties in a U.S. bankruptcy proceeding could not necessarily count on reciprocal cooperation

---

[7] *United States v. Valle*, 538 F.3d 341, 345 (5th Cir. 2008) (internal quotations omitted).

[8] UNCITRAL, *Model Law on Cross Border Insolvency* (1997).

[9] 11 U.S.C. § 1508.

[10] *See, e.g.,* In re *Maxwell Commc'n Corp.*, 93 F.3d 1036, 1053 (2d Cir. 1996) (providing example of U.S. court invoking comity and making efforts to cooperate with concurrent insolvency in England). Section 304 gave U.S. courts significant latitude in extending comity to foreign jurisdictions; however, many countries did not have similar provisions in their bankruptcy law allowing their courts to reciprocate. *See* Jay Lawrence Westbrook, *Chapter 15 at Last*, 79 AM. BANKR. L.J. 713, 719 (2005); *see also* In re *Maxwell Commc'n Corp.*, 93 F.3d at 1053 (recognizing difficulties with case-by-case cooperation but recognizing that Congress intended to facilitate cooperation to "reach workable solutions" through proceedings under section 304).

[11] In re *Maxwell Commc'n Corp.*, 93 F.3d at 1053.

No. 09-60193

by foreign jurisdictions—often to the detriment of U.S. businesses and creditors that were denied access to assets of the debtor located abroad.

The UNCITRAL Model Law represents a culmination of a long standing effort by the United States and other countries to develop a uniform system guiding needed cooperation.[12]  That the final negotiations included thirty-six UNCITRAL members—including the United States—representatives of forty observer states, and thirteen international organizations evidences its widespread support.[13]  The Model Law was "expressly designed to be integrated into local insolvency law"[14] and Chapter 15 closely hewed to the text of the enactment.  "Any departures from the actual text of the Model Law . . . were as narrow and limited as possible."[15]  All this being part of an effort by the United States to harmonize international bankruptcy proceedings for the benefit of American businesses operating abroad.  As directed by Congress, we mind this background as we discern the Chapter's reach.

Chapter 15 provides for the "recognition" of a "foreign proceeding" and an ancillary proceeding to assist the foreign proceedings.  To be recognized, the foreign proceeding must either fall within the definition of a "foreign main proceeding"[16] or "foreign nonmain proceeding."[17]  With recognition, the foreign representative may access federal courts with its claims under Chapter 15.

---

[12] LARK, *supra* note 1 at §2[3]; Westbrook, *supra* note 10, at 719.

[13] UNCITRAL, *Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency*, ¶8 (1997).

[14] LARK, *supra* note 1, at §2[4].

[15] Westbrook, *supra* note 10, at 720.

[16] 11 U.S.C. § 1502(4) ("'foreign main proceeding' means a foreign proceeding pending in the country where the debtor has the center of its main interests").

[17] 11 U.S.C. § 1502(5) ("'foreign nonmain proceeding' means a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment").

No. 09-60193

The foreign representatives seek relief under section 1521(a) of Chapter 15. Section 1521(a) provides that the bankruptcy court may grant "any appropriate relief," including staying various aspects of the proceedings, suspending rights of transfer, providing for discovery, granting administrative powers to the foreign representatives and "granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)."[18] This exception does not exist in the Model Law.[19] While it is plain that relief under the listed sections is excluded, the statute is silent regarding proceedings that apply foreign law, including any rights of avoidance such law may offer.

---

[18] 11 U.S.C. § 1521(a)(7).
Section (a) reads in its entirety:

> Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including—
> (1) staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a);
> (2) staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a);
> (3) suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a);
> (4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities;
> (5) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court;
> (6) extending relief granted under section 1519(a); and
> (7) granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

11 U.S.C. § 1521(a).

[19] UNCITRAL, *Model Law on Cross Border Insolvency,* Art. 21 (1997).

No. 09-60193

The sections explicitly excepted from (a)(7) are often referred to as "avoidance powers"—a trustee's powers to avoid the transfer of debtor property that would deplete the debtor's estate at the expense of creditors. Such powers, generally described, include those addressing exempt property (§ 522), the "strong arm" power, which permits the trustee to act as a judicial lien creditor (§ 544), the power to avoid statutory liens (§ 545), the power to avoid transactions as "preferences" (§ 547), the power to avoid fraudulent transfers (§ 548), and the power to avoid liens that secure claims for compensatory fine, penalty, or forfeiture, or punitive damages (§ 724(a)). Section 550 contains the rules that govern the mechanics of avoidance actions.

Where avoidance actions under U.S. law are excluded from a Chapter 15 ancillary proceeding, section 1523(a) ensures they may be brought in a full bankruptcy proceeding. And to ensure that a foreign representative enjoys the status of a trustee under those provisions, section 1523(a) grants standing to a foreign representative wishing to pursue an avoidance action not under its domestic law but under U.S. bankruptcy law in a Chapter 7 or 11 proceeding—a power generally reserved to the trustee or specific creditors.[20] This language roughly tracks that of the Model Law.[21] To be sure, section 1523(a) grants no substantive right of avoidance. Rather it lifts a potential standing roadblock for resort to Chapters 7 or 11.

---

[20]    11 U.S.C. § 1523(a) ("Upon recognition of a foreign proceeding, the foreign representative has standing in a case concerning the debtor pending under another chapter of this title to initiate actions under sections 522, 544, 545, 547, 548, 550, 553, and 724(a)"); UNCITRAL, *Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency*, ¶166 (1997) ("The effect of the provision is that a foreign representative is not prevented from initiating such actions by the sole fact that the foreign representative is not the insolvency administrator appointed in the enacting State.").

[21]    UNCITRAL, *Model Law on Cross Border Insolvency*, Art. 23.

Generally where there are enumerated exceptions "additional exceptions are not to be implied, in the absence of a contrary legislative intent."[22] And the oft recited maxim expressio unius est exclusio alterius carries weight. The statute provides for "any relief" and excepts only actions under sections 522, 544, 545, 547, 548, 550, and 724(a) of the Code and includes no other language suggesting that other relief might be excepted. While the statute denies the foreign representative the powers of avoidance created by the U.S. Code absent a filing under Chapter 7 or 11 of the Bankruptcy Code, it does not necessarily follow that Congress intended to deny the foreign representative powers of avoidance supplied by applicable foreign law. If Congress wished to bar all avoidance actions whatever their source, it could have stated so; it did not.[23]

The stated purpose and overall structure of Chapter 15 reflects its international origin and strongly suggests the answer—section 1521(a)(7) does not exclude avoidance actions under foreign law. Section 1501 states the purpose of the Chapter is to further cooperation between the U.S. courts, parties in U.S. bankruptcy proceedings and foreign insolvency courts and authorities, as well as promote "greater legal certainty," "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors," "protection and maximization of the value of the debtor's assets," and "facilitation of the rescue of financially troubled businesses."[24] Whatever its full reach, Chapter 15

---

[22] *See Andrus v. Glover Const. Co.*, 446 U.S. 608, 616-17 (1980); *see also Texas Oil & Gas Ass'n v. E.P.A.*, 161 F.3d 923, 938-39 (5th Cir. 1998).

[23] This reading appears to be supported by Judge Clark. CLARK, *supra* note 1, at §7[3] (referring to "the restriction on applying U.S. avoidance provisions in ancillary proceedings"). Other summaries are not so clear. *See* COLLIER'S INT'L BUS. INSOLVENCY GUIDE ¶9.11 (2009) ("[S]ection 1521(a)(7) authorizes any additional relief that may be available to a trustee except for the exercise of avoidance powers. Avoidance powers are only available in a full case under another chapter of title 11."); COLLIER ON BANKRUPTCY ¶1521.02 (2009) (same).

[24] 11 U.S.C. § 1501.

does not constrain the federal court's exercise of the powers of foreign law it is to apply.

Chapter 15 functions through the recognition of a foreign proceeding.[25] Only with recognition does broad relief become available: the representative is able to sue and be sued in U.S. courts,[26] to apply directly to a U.S. court for relief,[27] to commence a non-Chapter 15 case,[28] to intervene in any U.S. case in which the debtor is the party,[29] and U.S. courts must grant comity and cooperation to the foreign representative.[30] Under section 1520, upon recognition of a foreign main proceeding, certain relief is granted automatically including adequate protection, an automatic stay, and the power to prevent transfers of the debtor's property.[31] Additionally, as a catch-all, under section 1507 the court has authority to provide additional assistance to a foreign representative subject to the restrictions elsewhere in the Chapter.[32]

The structure of Chapter 15 provides authority to the district court to assist foreign representatives once a foreign proceeding has been recognized by

---

[25] Relief unavailable pre-recognition includes relief under 11 U.S.C. §§ 1507, 1511, 1512, 1520, 1521, 1523, 1524, & 1528; however, limited pre-recognition relief is available under § 1519. Section 1519 grants the court discretion to provide provisional relief including, staying execution against the debtor's assets, entrusting the administration of the debtor's assets to the foreign representative, suspending right to dispose of any assets of the debtor, permit discovery, or relief provided by 1521(a)(7).

[26] 11 U.S.C. § 1509(b)(1).

[27] 11 U.S.C. § 1509(b)(2).

[28] 11 U.S.C. § 1511(a).

[29] 11 U.S.C. § 1524.

[30] 11 U.S.C. § 1509(b)(3).

[31] CLARK, *supra* note 1, §7[1].

[32] 11 U.S.C. §1507(a). The "subject to" language prevents section 1507 from providing an end run around the restrictions on relief provided under the other sections. CLARK, *supra* note 1, §7[3].

the district court.  Neither text nor structure suggests additional exceptions to available relief.  Though the language does not explicitly address the use of foreign avoidance law, it suggests a broad reading of the powers granted to the district court in order to advance the goals of comity to foreign jurisdictions.  And this silence is loud given the history of the statute including the efforts of the United States to create processes for transnational businesses in extremis.

The district court relied on two House reports in finding Congress intended to relegate all avoidance actions to Chapter 7 and 11 proceedings.[33]

> Sec. 1521.  Relief that may be granted upon recognition of a foreign proceeding.  This section follows article 21 of the Model Law, with detailed changes to conform to United States law.  The exceptions in subsection (a)(7) relate to avoiding powers. The foreign representative's status as to such powers is governed by section 1523 below.  The avoiding power in section 549 and the exceptions to that power are covered by section 1520(a)(2). . . .  This section does not expand or reduce the scope of relief currently available in ancillary cases under sections 105 and 304 nor does it modify the sweep of sections 555 through 560.[34]

> Sec. 1523. Actions to avoid acts detrimental to creditors. This section follows article 23 of the Model Law, with wording to fit it within procedure under this title.  It confers standing on a recognized foreign representative to assert an avoidance action but only in a pending case under another chapter of this title. The Model Law is not clear about whether it would grant standing in a recognized foreign proceeding if no full case were pending. This limitation reflects concerns raised by the United States delegation during the UNCITRAL debates

---

[33] The district court's reasoning has been criticized by another bankruptcy court. *See* In re *Atlas Shipping A/S*, 404 B.R. 726 (Bankr. S.D.N.Y. 2009) ("While the parties relied extensively on *Condor* in briefing, the Court concludes that its reasoning is open to question . . . . The *Condor* court's conclusion that Congress intended to prevent a foreign representative from bringing avoidance actions based on foreign law is not supported by anything specifically in legislative history.  The court also ignores cases decided under § 304." (citations omitted)).

[34] H.R. Rep. 109-31, 109th Cong., 1st Sess. (2005).

No. 09-60193

> that a simple grant of standing to bring avoidance actions neglects to address very difficult choice of law and forum issues. This limited grant of standing in section 1523 does not create or establish any legal right of avoidance nor does it create or imply any legal rules with respect to the choice of applicable law as to the avoidance of any transfer of obligation. The courts will determine the nature and extent of any such action and what national law may be applicable to such action.[35]

The district court found and appellees now argue that Congress intended to relegate avoidance actions of all types to a full bankruptcy proceeding under Chapters 7 and 11. They argue that permitting the application of foreign avoidance law in a Chapter 15 case would allow the foreign representatives to section shop, bringing a Chapter 15 ancillary proceeding when they seek to use foreign law and a Chapter 7 or 11 proceeding when they seek to use U.S. law. While concern over choice of law difficulties is not without some force, we are not persuaded that it counsels a finding that foreign law is excluded.

Conflict of laws issues arise when multiple jurisdictions seek to apply different bankruptcy law to the same estate. "Avoidance laws have the purpose and effect of re-ordering the distribution of a debtor's assets, erasing the results of debtor and creditor actions in favor of the collective priorities established by the distribution statute."[36] They therefore must be treated as an integral part of the entire bankruptcy system. When courts mix and match different aspects of bankruptcy law, the goals of any particular bankruptcy regime may be thwarted and the end result may be that the final distribution is contrary to the result that either system applied alone would have reached. These concerns were clearly articulated during the negotiations over the Model Law.

---

[35] *Id.*

[36] Jay Lawrence Westbrook, *Choice of Avoidance Law in Global Insolvencies*, 17 BROOK. J. INT'L L. 499, 508 (1991).

No. 09-60193

UNCITRAL's Working Group on Insolvency Law examined three potential approaches to the question of which law a recognizing court should apply. The first approach would allow the recognizing court to apply its own law. This was favored by some countries concerned with the potential lack of familiarity with foreign law by recognizing courts.[37] The second approach would apply the law of the main proceeding. This approach was favored by some as it "would lead to a more consistent, harmonized result, in view of divergences among national insolvency laws" and would help "avoid abetting debtors seeking to conceal assets behind another law that might provide a haven for those assets."[38] A third approach was to permit the recognizing court to apply either the law of the main proceeding or its own law—a solution which might "provide flexibility needed to limit insulation of assets from insolvency proceedings."[39] However this approach drew concern that it might raise the potential that a foreign representative "would be enabled to exercise more powers than those that would be available to the representative under the law of the appointing jurisdiction."[40]

The final provision did not accept any of these three approaches in full. Rather, the Model Law permitted the recognizing court to grant any appropriate relief and granted standing to the foreign representatives to bring avoidance actions under the law of the recognizing state.[41] This purposefully left open the

---

[37] UNCITRAL, *Report of the Working Group on Insolvency Law on the Work of the Eighteenth Session*, ¶¶ 50-51, A/CN.9/419 (Dec. 1, 1995).

[38] *Id.* at ¶ 52.

[39] *Id.* at ¶ 53.

[40] *Id.*

[41] UNCITRAL, *Model Law on Cross Border Insolvency,* Art. 23 (1997).

question of which law the court should apply[42]—in deference to the choice of law concerns raised by the United States.

The drafters of Chapter 15, responsive to the concerns raised at the UNCITRAL debates, confined actions based on U.S. avoidance law to full Chapter 7 and 11 bankruptcy proceedings—where the court would also decide the law to be applied to the distribution of the estate.[43] The application of foreign avoidance law in a Chapter 15 ancillary proceeding raises fewer choice of law concerns as the court is not required to create a separate bankruptcy estate.[44] It accepts the helpful marriage of avoidance and distribution whether the proceeding is ancillary applying foreign law or a full proceeding applying domestic law—a marriage that avoids the more difficult depecage rules of conflict law presented by avoidance and distribution decisions governed by different sources of law.

It is no happenstance that this solution also addresses the concern that foreign representatives would bring an ancillary action simply to gain access to avoidance powers not provided by the law of the foreign proceeding. Access to foreign law offers no opportunity to gain the powers of avoidance provided by the U.S. Bankruptcy Code when there is no such power offered by the foreign

---

[42] UNCITRAL, *Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency*, ¶166 (1997) ("The provision is drafted narrowly in that it does not create any substantive right regarding such actions and also does not provide any solution involving conflict of laws.").

[43] Such an analysis occurred in the pre-Chapter 15 case *In re Maxwell Communication Corporation*. 93 F.3d 1036 (2d Cir. 1996). There a British holding company with large subsidiaries in the United States filed dual bankruptcy proceedings in the United States and in Britain. The U.S. bankruptcy court and the British court approved of a Protocol to further cooperation which recognized the British administrators as the corporate governance of the debtor in possession. The debtor sought to use U.S. avoidance law in the U.S. proceeding to avoid certain transactions. However the U.S. bankruptcy court applied the doctrine of comity to find that even in the U.S. proceeding the administrators could not use U.S. avoidance law.

[44] *See* 11 U.S.C. § 1501 *et. seq.*

No. 09-60193

state—at least not without filing a full bankruptcy case under the Code—and deference to comity does not invite forum shopping.

This case is illustrative of Chapter 15's response to concerns of the UNCITRAL delegation. The foreign representatives are not seeking to mix and match foreign and U.S. law—they only seek the application of Nevis law. The foreign representatives gain no powers not contemplated by the laws of Nevis through filing suit in the United States and the distribution regime established by Nevis law is not threatened by the potential application of conflicting avoidance rules.

Congress did not intend to restrict the powers of the U.S. court to apply the law of the country where the main proceeding pends. Refusing to do so would lend a measure of protection to debtors to hide assets in the United States out of the reach of the foreign jurisdiction, forcing foreign representatives to initiate much more expansive proceedings to recover assets fraudulently conveyed, the scenario Chapter 15 was designed to prevent.  We are not persuaded that Congress has unwittingly facilitated such tactics—with foreign insurance companies, access to Chapters 7 and 11 is otherwise denied. Nor is the suggestion that the representatives need only render their claim in Nevis an answer. Not all defendants are necessarily within the jurisdictional reach of the Nevis court.

Our interpretation is also supported by courts' interpretation of section 304, the predecessor of Chapter 15. Congress intended that case law under section 304 apply unless contradicted by Chapter 15.[45] Though section 304 was more limited in scope than Chapter 15, it provided significant discretionary relief: a court could enjoin actions or judgments against the debtor or debtor's property, order the turnover of the property to a foreign representative, or "order

---

[45] H.R. Rep. 109-31, 109th Cong., 1st Sess. (2005).

other appropriate relief."[46]   The statute also provided that the courts should exercise discretion in the spirit of comity and in the interests of the parties.[47] This court summed up the function of section 304: "The filing of a 304 petition does not create a bankruptcy 'estate' that must be administered by a court in the United States, but it does allow the foreign debtor to prevent piecemeal distribution of its assets in the United States while its plan is being structured in the foreign jurisdiction."[48]

"Early authority suggested Bankruptcy Courts [had] discretion to authorize utilization of the avoiding powers under the Code in a § 304 ancillary proceeding."[49]   Indeed, a foreign representative could use avoidance powers

---

[46] Section 304 read in relevant part:
(b) . . . the court may—
    (1) enjoin the commencement or continuation of—
        (A) any action against—
            (i) a debtor with respect to property involved in such foreign proceeding; or
            (ii) such property; or
        (B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;
    (2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or
    (3) order other appropriate relief.
11 U.S.C. § 304(b) (2000), *repealed by* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) § 802(d)(3), 119 Stat. at 146.

[47] The statute provides six factors for the court to consider: "(1) just treatment of all holders of claims against or interests of such estate; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of such estate; (4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title; (5) comity; and (6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns." 11 U.S.C. § 304(c) (2000), *repealed by* BAPCPA § 802(d)(3), 119 Stat. at 146.

[48] In re *Rutger Schimmelpenninck*, 183 F.3d 347, 361 (5th Cir. 1999).

[49] In re *Axona Int'l Credit & Comm. Ltd.*, 88 B.R. 597, 607 n.17 (Bankr. S.D.N.Y. 1988 (citing, e.g., In re *Trakman*, 33 B.R. 780, 783 (Bankr. S.D.N.Y. 1983)).

15

under both U.S. and foreign law.  However, a bankruptcy court in *In re Metzeler* found that only those avoidance actions relying upon foreign law were permitted under section 304; actions that would rely on U.S. avoidance law could only be brought in a proceeding under Chapter 7 or 11 of the Bankruptcy Code.  The court criticized the prior holdings and stated "[t]he section 304 court's tasks should be to assist implementation of the foreign court's decrees . . . not to provide the foreign representative with the benefit of American avoidance powers."[50]  The court continued "[i]t is not the purpose of § 304 to determine the nature of an estate involved in a foreign proceeding.  Those parameters are left to foreign law that creates the avoidance powers granted to a trustee."[51]  The court accepted that the use of avoidance powers created by foreign law would not offend section 304 and the court allowed its avoidance action based on foreign law to proceed.[52]

In sum, under section 304, avoidance actions under foreign law were permitted when foreign law applied and would provide for such relief.  Congress essentially made explicit *In re Metzeler*'s articulation of the bar on access to avoidance powers created by the U.S. Code by foreign representatives in ancillary proceedings.

Lastly, the application of foreign law under Chapter 15 of the Bankruptcy Code implicates none of the salient concerns driving reliance by United States Courts upon the law of foreign nations in defining domestic norms.  Providing

---

[50] In re *Metzeler*, 78 B.R. 674, 677 (Bankr. S.D.N.Y. 1987) (quoting R.A. Gitlin & E.D. Flaschen, *The International Void in the Law of Multinational Bankruptcies*, 42 BUS. LAW. 307, 319 (1987)); *see also* In re *Aerovias Nacionales De Columbia S.A. Avianca*, 303 B.R. 1, 16 (Bankr. S.D.N.Y. 2003); In re *Griffin Trading Co.*, 270 B.R. 883, 893 (Bankr. N.D. Ill. 2001) (favorably citing *Metzeler*); *Petition of Kojima*, 177 B.R. 696, 703 n.35 (Bankr. D. Colo. 1995) (permitting avoidance action under Japanese law pursuant to section 304); In re *Tarricone, Inc.*, 80 B.R. 21, 23-24 (Bankr. S.D.N.Y. 1987) (favorably citing *Metzeler*).

[51] In re *Metzeler*, 78 B.R. at 677.

[52] *Id.*

access to domestic federal courts to proceedings ancillary to foreign main proceedings springs from distinct impulses of providing protection to domestic business and its creditors as they develop foreign markets. Settled expectations of the rules that will govern their efforts on distant shores is an important ingredient to the risk calculations of lenders and corporate management. In short, Chapter 15 is a congressional implementation of efforts to achieve the cooperative relationships with other countries essential to this objective. The hubris attending growth of the country's share of international commerce rests on a nourishing of its exceptionalism not its diminishment.

IV

As Chapter 15 was intended to facilitate cooperation between U.S. courts and foreign bankruptcy proceedings, we read section 1521(a)(7) in that light and hold that a court has authority to permit relief under foreign avoidance law under the section. We reverse the judgment of the district court dismissing for want of jurisdiction and remand for further proceedings consistent with this opinion.