# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 24, 2019

No. 18-60752

Lyle W. Cayce
Clerk

In the Matter of:  HERITAGE REAL ESTATE INVESTMENT, INCORPORATED,

     Debtor

STEPHEN SMITH,

     Appellee

v.

DYNASTY GROUP, INCORPORATED, an Alabama Corporation,

     Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No.  3:17-CV-883

Before BARKSDALE, STEWART, and COSTA, Circuit Judges.

PER CURIAM:*

     This appeal comes to us from the district court, which affirmed an appeal from the bankruptcy court. For the following reasons, we AFFIRM.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-60752

## I. Background

In 1995, Heritage Real Estate Investment, Inc. ("Heritage") purchased 80 acres of land ("Property") in Kemper County, Mississippi. A warranty deed evincing the purchase was recorded in the Office of the Chancery Clerk of Kemper County. In November 2014, Heritage filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Mississippi. Heritage did not list the Property in Schedule A of its bankruptcy filing.[1]

In January 2015, Heritage's case was converted to a Chapter 7 bankruptcy, and Plaintiff-Appellee Stephen Smith was appointed Trustee of the proceeding. In June 2015, Defendant-Appellant Dynasty Group, Inc. ("Dynasty") recorded a quitclaim deed in the Office of the Chancery Clerk of Kemper County. This quitclaim deed purported to show that Heritage had conveyed the Property to Dynasty in 2008. Dynasty's recordation prompted the Trustee to file an adversary proceeding in the bankruptcy court seeking to avoid the quitclaim deed under 11 U.S.C. § 544(a), which is known as the "strong arm" clause of the Bankruptcy Code.[2]

The Trustee's claim proceeded to trial before the bankruptcy court. After trial, the bankruptcy court ruled in the Trustee's favor. *Smith v. Dynasty Group, Inc. (In re Heritage Real Estate Inv., Inc.)*, Ch. 7 Case No. 14-03603-NPO, Adv. No. 16-00040-NPO, 2017 WL 4693991, at *6 (Bankr. S.D. Miss. Oct. 17, 2017). Specifically, the bankruptcy court held that: (1) the quitclaim deed

---

[1] Heritage had previously filed for bankruptcy in Alabama, but that case was dismissed in October 2014. In contrast to what Heritage did in its Mississippi bankruptcy, Heritage included the Property in Schedule A of its Alabama bankruptcy. For reference, "Schedule A requires the debtor to list all real property in which the debtor has any legal, equitable, or future interest." *In re O'Dwyer*, 611 F. App'x 195, 196 n.2 (5th Cir. 2015).

[2] "Avoidance" refers to a trustee's statutory authority under § 544 to "avoid" or effectively negate certain transfers of property that would otherwise deplete the debtor's estate. *See In re Condor Ins. Ltd.*, 601 F.3d 319, 323 (5th Cir. 2010). In addition to seeking relief under § 544, the Trustee also sought to "set aside" the purported 2008 conveyance under other sections of the Bankruptcy Code, including 11 U.S.C. §§ 362, 541, and 549.

No. 18-60752

was invalid on its face under Mississippi law because it was signed by the purported grantee, Dynasty, rather than the purported grantor, Heritage; (2) even if the deed were valid, the Trustee had the power under § 544(a)(3) as a hypothetical bona fide purchaser to avoid the quitclaim deed; and (3) even if the deed were valid and the Trustee lacked the power to avoid the quitclaim deed, the purported transfer was "void" and without legal effect because it amounted to an attempted post-petition transfer of property in violation of the "automatic stay" provided by 11 U.S.C. § 362(a)(3). *Id.* When Dynasty appealed the ruling to the district court, the bankruptcy court's decision was affirmed on every ground. *Smith v. Dynasty Group, Inc. (In re Heritage Real Estate Inv., Inc.)*, No. 3:17cv883-LG-LRA, slip op. at 11–12 (S.D. Miss. Sept. 25, 2018). Dynasty now asks us to decide whether the district court erred in affirming the bankruptcy court's decision.

## II. Standard of Review

"We review the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Goodrich Petroleum Corp.*, 894 F.3d 192, 196 (5th Cir. 2018), *as revised* (June 29, 2018) (quoting *In re Entringer Bakeries, Inc.*, 548 F.3d 344, 348 (5th Cir. 2008) (internal quotation marks omitted)). "Thus, we review the bankruptcy court's findings of fact for clear error and its legal conclusions de novo." *Id.* (citing *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003)).

## III. Analysis

The Bankruptcy Code's "strong arm" provisions endow trustees with special powers in bankruptcy proceedings.[3] The applicable provision here is 11 U.S.C. § 544(a)(3), which provides in relevant part:

---

[3] *See In re Robertson*, 203 F.3d 855, 863–64 (5th Cir. 2000) (citing 11 U.S.C. § 544).

No. 18-60752

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . .

> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

The statute thus empowers trustees with the ability to avoid "a transfer of real property that is not perfected and enforceable against a bona fide purchaser at the time the bankruptcy petition is filed." *In re Hamilton*, 125 F.3d 292, 298 (5th Cir. 1997). To determine whether a purported transfer of real property was perfected and enforceable against a bona fide purchaser at the time the bankruptcy petition was filed, federal courts turn to state law. *Id.* ("While the Bankruptcy Code creates the status of a hypothetical bona fide purchaser, state law defines that status.").

The issue before us, then, is whether the Trustee—awarded the status of a hypothetical bona fide purchaser of the Property at the time Heritage filed its bankruptcy petition—had the power to obtain legal title to the Property under Mississippi law despite the existence of the 2008 quitclaim deed. We conclude that the Trustee did have such a power, and that the district court did not err in affirming the bankruptcy court's ruling on the matter.

Under Mississippi law, a bona fide purchaser is one who purchases "a title for a valuable consideration without notice of any defect in it." *Collier v. Shell Oil Co.*, 534 So. 2d 1015, 1018 (Miss. 1988) (quoting *Giesbrecht v. Smith*, 397 So. 2d 73, 77 (Miss. 1981)). Because "Mississippi is a race-notice jurisdiction," *Community Trust Bank of Mississippi v. First National Bank of Clarksdale*, 150 So. 3d 683, 687 (Miss. 2014), a bona fide purchaser has

superior rights to a previous purchaser of land unless the previous transaction had been recorded or the bona fide purchaser had notice of the previous transaction before purchasing the land. *See* MISS. CODE. ANN. § 89-5-5. Thus, the Trustee may avoid the 2008 quitclaim deed as a hypothetical bona fide purchaser of the Property as long as the quitclaim deed had not been recorded at the time the bankruptcy petition had been filed and the Trustee lacked notice of the quitclaim deed.

It bears emphasizing that the Trustee's actual notice of the quitclaim deed is irrelevant under this analysis. *In re Hamilton*, 125 F.3d at 299 ("Under section 544, the actual knowledge of the trustee is not relevant.") (citing 11 U.S.C. § 544(a)). For our purposes, the question is whether the Trustee had constructive or inquiry notice of the quitclaim deed at the time Heritage filed its bankruptcy petition. *Id.* We again turn to Mississippi law to answer this question. *See id.*

"Constructive notice arising from the record of a muniment of title is imputed to purchasers and creditors from a mere presumption of law, and it imputes only such knowledge as the instrument there recorded discloses, and not what a diligent inquiry into its meaning might disclose." *Simmons v. Hutchinson*, 33 So. 21, 22 (Miss. 1902); *see also Cmty. Tr. Bank*, 150 So. 3d at 689–90 (indicating that constructive notice must come from a recorded instrument) (citing *Simmons*, 33 So. 21 at 22). "Inquiry notice, as recognized in Mississippi, arises when a party has actual notice or knowledge of facts that would lead a reasonably prudent person to question the sufficiency of title to property." *Metro. Nat'l Bank v. United States*, 901 F.2d 1297, 1303–04 (5th Cir. 1990) (internal quotation marks and citation omitted).

Dynasty did not record the quitclaim deed until after Heritage's bankruptcy petition had been filed. At the time the petition was filed, the most recently-recorded instrument regarding the Property was a valid deed showing

that Heritage, not Dynasty, owned the Property. Dynasty does not argue that anything in this deed would have put a bona fide purchaser on notice that it was in fact Dynasty, not Heritage, that owned the Property.

Instead, Dynasty argues that a hypothetical bona fide purchaser would have been on inquiry notice of the 2008 transaction at the time Heritage filed its bankruptcy petition for three reasons: (1) cattle were grazing on the Property; (2) Heritage had listed the Property as one of its assets in the previously-dismissed bankruptcy in Alabama but had not listed it as one of its assets in the Mississippi bankruptcy; and (3) Heritage, if contacted by a prospective purchaser, would have told the prospective purchaser that Dynasty, not Heritage, owned the Property. But nothing in the deed recorded at the time Heritage's Mississippi bankruptcy petition was filed would have put a prospective buyer on inquiry requiring an investigation that may have revealed any of this. Nor, in any event, would any of these reasons have led "a reasonably prudent person to question the sufficiency of title to [the Property]." *Id.* (citation omitted).

For Dynasty to prevail on these arguments, Mississippi law would have to impose on prospective buyers an obligation to investigate every aspect of a prospective purchase even if the record chain of title and facts known to the prospective buyer reveal nothing that would call into question the true owner of an estate. Mississippi imposes no such obligation. *Id.* Accordingly, both the bankruptcy court and the district court correctly determined that the Trustee possessed the power as a hypothetical bona fide purchaser under § 544 to avoid the 2008 quitclaim deed. Because we affirm on this ground, we need not reach the parties' other arguments.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

6